UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| GARY B.; JESSIE K., a minor by Yvette K., guardian ad litem; CRISTOPHER R. and ISAIAS R., minors, by Escarle R., guardian ad litem; ESMERALDA V., a minor, by Laura V., guardian ad litem; PAUL M.; JAIME R., a minor, by Karen R., guardian ad litem, on behalf of themselves and all others similarly situated.<br><br>        Plaintiffs,<br><br>v<br><br>RICHARD D.  SNYDER, in his Official Capacity as Governor of the State of Michigan; JOHN C. AUSTIN, MICHELLE FECTEAU, LUPE RAMOS-MONTIGNY, PAMELA PUGH, KATHLEEN N. STRAUS, CASANDRA E. ULBRICH, EILEEN WEISER, and RICHARD ZEILE, in their official capacities as members of the Michigan Board of Education; BRIAN J. WHITSON, in his official capacity as Superintendent of Public Instruction for the State of Michigan; DAVID B. BEHEN, in his official capacity as Director of the Michigan Department of Technology, Management, and Budget; and Natasha Baker, in her official capacity as the State School Reform/Redesign Officers,<br><br>        Defendants. | **CLASS ACTION**<br><br>No. 16-CV-13292<br><br>HON. STEPHEN J.<br>        MURPHY III<br><br>MAG. ANTHONY P. PATTI<br><br><br>**DEFENDANTS' MOTION TO DISMISS** |

_____

Jennifer M. Wheeler,  (P6316898)
SIDLEY AUSTIN LLP
Attorney for Plaintiffs
One South Dearborn
Chicago, IL 60603
(312) 853-7000
jwheeler@sidley.com

Bruce A. Miller (P17746)
MILLER COHEN, PLC
600 West Lafayette Blvd., 4th Floor
Detroit, MI 48226
(313) 566-4787
brucemiller@millercohen.com

_____

Timothy J. Haynes (P41196)
Joshua S. Smith (P63349)
Katherine J. Bennett (75913)
Attorneys for Defendants
Michigan Department of Attorney General
Health, Education & Family Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700
haynest3@michigan.gov
Smithj46@michigan.gov
BennettK1@michigan.gov

_____/

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants move this

Court to dismiss the Complaint.  Defendants say in support:

1.      Pursuant to L.R. 7.1, on November 3, 2016, counsel for Defendants

organized and participated in a conference call with Plaintiffs' counsel to

determine if they would concur in the relief sought, providing an explanation of the
nature of and basis for this motion.  Plaintiffs' counsel refused to concur,
necessitating this Motion.

2.      This Court must dismiss a complaint where it lacks jurisdiction.  Fed. R.
Civ. P. 12(b)(1).

3.      The Court does not have subject-matter jurisdiction because the Plaintiffs
lack standing under U.S. Const., art. III, § 2, and the relief they request is barred by
Eleventh Amendment immunity, and their claims are barred by the
*Rooker/Feldman* doctrine.  *District of Columbia Court of Appeals v Feldman, 460*
U.S. 462, 486 (1983); *Rooker v Fidelity Trust Co.,* U.S. 413,415-416 (1923).

4.      Although Rule 12(b)(6) requires the Court to accept all well-pleaded factual
allegations as true, the Court need not accept all legal conclusions as true.  *Ashcroft
v. Iqbal*, 556 U.S. 662, 678-679 (2009).  A formulaic recitation of the elements of a
legal action is insufficient.  *Id.* at 681.  And "[c]onclusorily stating . . . that
Defendants violated [Plaintiffs'] rights under a laundry list of federal statutes is
insufficient to establish a claim for relief[.]"  *Fernanders v. Mich. Dep't of Military
& Veterans Affairs,* No. 12-11752, 2012 U.S. Dist. LEXIS 111872 at *7 (E.D.
Mich. Aug. 9, 2012) (Ex. 1).

5.      A complaint is defective if it fails to identify which allegations apply to
which defendant.  *Roberts v. Louisiana Homes*, No. 09-CV-11066, 2009 U.S. Dist.

LEXIS 36946, at *3 (E.D. Mich. May 1, 2009) (Ex. 2).  In fact, in other cases, this

Court has instructed plaintiffs to "clearly state [for each count] against which

Defendant or Defendants the claim is made and a factual basis sufficient to

establish the claim."  *Darwich v. Dearborn*, No. 10-14073, 2011 U.S. Dist. LEXIS

49724, at * 7 (E.D. Mich. May 10, 2011) (Ex. 3).

6.     To survive a motion to dismiss, the factual allegations must be enough to

raise a right to relief above a speculative level.  *Mich. Div. – Monument Builders of*

*N. Am. v. Mich. Cemetery Ass'n*, 524 F.3d 726, 731 (6th Cir. 2008).  Furthermore,

simply stating that the defendants violated a general list of federal rights is

insufficient.  *Fernanders*, 2012 U.S. Dist. LEXIS 111872 at *7.

7.     In any civil claim, a plaintiff must plead the factual grounds entitling her to

relief, which "requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555-556 (2007).  The factual allegations must be sufficiently specific to

present a cognizable, as opposed to a merely speculative, claim.  *Id*.  A complaint

must, therefore, set forth allegations of fact, not merely conclusions of law, so that

the court "may draw the proper conclusion from all the facts."  *Chesapeake & O R*

*Co. v. Cockrell*, 232 U.S. 146, 151-152 (1914); *Gold-Washing & Water Co. v.*

*Keyes*, 96 U.S. 199, 202-203 (1878) (superseded by statute on other grounds).

8.     "Courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), abrogated on other grounds, *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002).

9.     Here, Plaintiffs have failed to state a claim against Defendants because they have not alleged facts sufficient to overcome the immunity granted to Defendants under federal law.

10.    Also, Plaintiffs have not stated a claim in Counts I, II or III against Defendants under 42 U.S.C. § 1983 because they have failed to sufficiently allege the violation of a specific right by Defendants.

11.    There is no fundamental right to literacy.  Plaintiffs' claims go far beyond mere access to education and ask this Court to serve as a "super" legislature tasked with determining and dictating educational policy in every school district and school building throughout the United States where an illiterate child may be found.  Such a path would effectively supersede democratic control by voters and the judgment of parents, allowing state and federal courts to peer over the shoulders of teachers and administrators and substitute court judgment for the professional judgment of educators.  This Court should soundly reject Plaintiffs' attempt to destroy the American tradition of democratic control of schools by creating a fundamental right out of whole cloth.

12.    Plaintiffs have further failed to state a claim in Counts IV or V against

Defendants because they have not articulated any particular claims against, or

improper conduct by, Defendants.

WHEREFORE, Defendants respectfully request that this Honorable Court

grant this motion and dismiss this lawsuit with prejudice.

Respectfully submitted,

Bill Schuette
Attorney General

//s// Timothy J. Haynes
Timothy J. Haynes
Joshua S. Smith
Katherine J. Bennett
Assistant Attorneys General
Attorneys for State Defendants
Health, Education & Family Services
P.O. Box 30758
Lansing, MI 48909
(517)373-3300
haynest3@michigan.gov
Smithj46@michigan.gov
BennettK1@michigan.gov
P41196
P63349
Dated: November 17, 2016      P75913

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2016, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

/s/ Timothy J. Haynes
Assistant Attorney General
Attorney for State Defendants
Health, Education & Family Services
P.O. Box 30758
Health, Education & Family Services
HaynesT3@michigan.gov
P41196

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY B.; JESSIE K., a minor by Yvette
K., guardian ad litem; CRISTOPHER R.
and ISAIAS R., minors, by Escarle R.,
guardian ad litem; ESMERALDA V., a
minor, by Laura V., guardian ad litem;
PAUL M.; JAIME R., a minor, by Karen
R., guardian ad litem, on behalf of
themselves and all others similarly
situated.

       Plaintiffs,

v

RICHARD D.  SNYDER, in his Official
Capacity as Governor of the State of
Michigan; JOHN C. AUSTIN,
MICHELLE FECTEAU, LUPE RAMOS-
MONTIGNY, PAMELA PUGH,
KATHLEEN N. STRAUS, CASANDRA
E. ULBRICH, EILEEN WEISER, and
RICHARD ZEILE, in their official
capacities as members of the Michigan
Board of Education; BRIAN J.
WHITSON, in his official capacity as
Superintendent of Public Instruction for
the State of Michigan; DAVID B.
BEHEN, in his official capacity as
Director of the Michigan Department of
Technology, Management, and Budget;
and Natasha Baker, in her official capacity
as the State School Reform/Redesign
Officers,

       Defendants.

**CLASS ACTION**

No. 16-CV-13292

HON. STEPHEN J.
    MURPHY III

MAG. ANTHONY P. PATTI

**BRIEF IN SUPPORT OF
DEFENDANTS' MOTION TO
DISMISS**

_____

Jennifer M. Wheeler,  (P6316898)
SIDLEY AUSTIN LLP
Attorney for Plaintiffs
One South Dearborn
Chicago, IL 60603
(312) 853-7000
jwheeler@sidley.com

Bruce A. Miller (P17746)
MILLER COHEN, PLC
600 West Lafayette Blvd., 4th Floor
Detroit, MI 48226
(313) 566-4787
brucemiller@millercohen.com

---

Timothy J. Haynes (P41196)
Joshua S. Smith (P63349)
Katherine J. Bennett (75913)
Attorneys for Defendants
Michigan Department of Attorney General
Health, Education & Family Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700
haynest3@michigan.gov
Smithj46@michigan.gov
BennettK1@michigan.gov

_____/

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Bill Schuette
Attorney General

Timothy J. Haynes
Joshua S. Smith
Katherine J. Bennett
Assistant Attorneys General
Attorneys for State Defendants
Health, Education and Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700
haynest3@michigan.gov
Smithj46@michigan.gov
BennettK1@michigan.gov
P41196
P63349
P75913

Dated: November 17, 2016

# TABLE OF CONTENTS

Page

Table of Contents ......................................................................... i

Concise Statement of Issues Presented ................................... xi

Controlling or Most Appropriate Authority ............................ xi

Statement of Facts ......................................................................... 1

    Nature of the Case ................................................................. 1

Argument ....................................................................................... 1

    Background ............................................................................. 1

    The Detroit School District's Legacy of Deficit and Enrollment
        Decline ............................................................................ 3

    Michigan's Successive Acts to Address Local Financial Distress .............. 4

    The State of Michigan Does Not Operate or Control Public Schools in
        the City of Detroit ........................................................ 5

    The State of Michigan's Role in Public Education ................... 9

    Additional Educational Options in Michigan ......................... 11

    Issues Presented .................................................................. 12

I.    This Court lacks jurisdiction because Plaintiffs lack standing and
    Defendants have Eleventh Amendment Immunity. ................. 12

    A.    Plaintiffs lack standing to bring their claims. ................. 12

    B.    The Eleventh Amendment bars Plaintiffs' requested relief. ............ 15

    C.    Plaintiffs' claims are barred by the Rooker/Feldman doctrine. ........ 17

II.    Plaintiffs fail to state a cause of action against Defendants. ............ 19

i

A.  There is no fundamental right to literacy (Count I). ....................... 20

    1.  Courts have long rejected claims to a fundamental right of education.................................................................... 22

    2.  No textual or case-law authority exists for the "fundamental right" Plaintiffs claim. .................................. 26

    3.  Plaintiffs' claim does not survive the applicable rational basis review.................................................................... 28

B.  Plaintiffs fail to state a claim under the state-created danger doctrine (Count II)........................................................................ 30

C.  Plaintiffs fail to state a constitutional violation for equal protection based on race (Count III)................................................ 33

D.  Plaintiffs' Title VI claims must be dismissed because they have failed to state a discrimination claim against the State of Michigan or any of its officers (Count IV)...................................... 36

Conclusion and Relief Requested............................................................ 39

Certificate of Service ................................................................................. 41

# INDEX OF AUTHORITIES

## Cases

*Alden v. Maine,*
  527 U.S. 706,  (1999) ........................................................... 19

*Alexander v. Choate,*
  469 U.S. 287 (1985)............................................................ 49

*Alexander v. Sandoval,*
  532 U.S. 275 (2001) ........................................................... 47

*Alexander,*
  532 U.S. at 293 ................................................................. 51

*Am. Canoe Ass'n v. City of Louisa Water & Sewer Comm'n,*
  389 F.3d 536,  (2004)...................................................... 17, 18

*Barlow v. Logos Logistics, Inc.,*
  34 F. Supp. 3d 686 (E.D. Mich. 2014).................................. 32

*Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
  193 F.3d 415, 422 (6th Cir. 1999) ...................................... 24

*Binno v. American Bar Assoc.*, 826 F.3d 338, 344 (6th Cir. 2016) ......... 15

*Bradley v. Milliken,*
  402 F. Supp. 1096, 1104-1105 (E.D. Mich. 1975) .................. 8

*Bukowski v. City of Akron,*
  326 F.3d 702, ................................................................... 41

*Cartwright v. City of Marine City,*
  336 F.3d 487 (6th Cir. 2003) .............................................. 41

*Collins v. City of Harker Heights,*
  503 U.S. 115, (1992) ......................................................... 36

*Council of Orgs. & Others For Ed. About Parochiaid v. Engler,*
  566 N.W.2d 208 (Mich. 1997) ........................................... 13

iii

*County of Sacramento v. Lewis*,
   523 U.S. 833,  (1998) ................................................................... 43

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*,
   648 F.3d 365, (6th Cir. 2011) ..................................................... 46

*Darwich*,
   2011 U.S. Dist. LEXIS 49724, at *7 ......................................... 50

*Davids v. N. Iowa Cmty. Sch. Dist.*,
   Case No. 14-3002-MWB, 2015 U.S. Dist. LEXIS 92421 (N.D. Iowa 2015) .... 30

*Deshaney v. Winnebago County Dep't of Social Services*,
   489 U.S. 189 (1989) ................................................................... 36

*District of Columbia Court of Appeals v. Feldman*,
   460 U.S. 462, 486 (1983) ........................................................... 22

*Doe v. L.A. Unified Sch. Dist.*,
   No. 2:16-cv-00305-CAS, 2016 U.S. Dist. LEXIS 66291 (C.D. Cal. 2016) ...... 30

*Edelman v. Jordan*,
   415 U.S. 651, (1974) ................................................................. 20

*EJS Props., L.L.C. v. City of Toledo*,
   698 F.3d 845, (6th Cir. 2012) ................................................... 27

*Ex Parte Young*,
   209 U.S. 123,  (1908) ................................................................. 20

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
   544 U.S. 280, 284 (2005) ........................................................... 23

*Feldman,* 460 U.S. at 486. .............................................................. 23

*Fenner & Smith, Inc.*,
   193 F.3d 415, (6th Cir. 1999) ................................................... 24

*Galdikas v. Fagan*,
   342 F.3d 684 (7th Cir. 2003) ..................................................... 31

*Grinter v. Knight*,
   532 F.3d 567 (6th Cir. 2008) ..................................................... 27

*Harris v. McRae*,
    448 U.S. 297, (1980) ............................................................ 37

*Heller v. Doe*,
    509 U.S. 312, (1993) ............................................................ 37

*Hotchkiss v. Garno*,
    883 F. Supp. 2d 719 (E.D. Mich. 2012 .......................... 49, 51

*Hunt v. Sycamore Cmty Schl Dist. Bd. of Educ.*,
    542 F.3d 529, (6th Cir. 2008) ........................................... 43

*In re City of Detroit*,
    2016 U.S. App. LEXIS 20397 at *31-*32 ........................ 26, 38

*In re City of Detroit*,
    2016 U.S. App. LEXIS 20397 at *32 .................................. 27

*Iqbal*,
    556 U.S. at 678 ................................................................. 50

*Jones v. Reynolds*,
    438 F.3d 685 (6th Cir. 2006) ........................................ 40, 42

*Kadrmas v. Dickinson Pub. Sch.*,
    487 U.S. 450, (1988) ......................................................... 29

*Kentucky v. Graham*,
    473 U.S. 159, (1985) ......................................................... 20

*Kincaid v. City of Flint*,
    874 N.W.2d 193, (Mich. App. 2015) ................................. 42

*Klinger v. Department of Corrections*,
    31 F.3d 727, (8th Cir. 1994) ............................................. 44

*L.M. v. State*,
    862 N.W.2d 246 (Mich. Ct. App. 2014) ...................... 2, 11, 42

*Lindsey v. Normet*,
    405 U.S. 56 (1972) ........................................................... 28

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)............. 15, 16, 17, 18

*M.G. v. Crisfield*, 547 F. Supp. 2d 399, 408 (D. N.J. 2008)............................... 31

*Martin Luther King, Jr., Elementary School Children in Green Rd.
  Hous. Project v. Michigan Bd. of Educ.*,
  451 F. Supp. 1324 (E.D. Mich. 1978) ............................................ 30, 37

*Martin Luther King, Jr., Elementary School Children*,
  451 F. Supp. at 1328 ........................................................................ 39

*McQueen v. Beecher Cmty Schls*,
  433F.3d 460,  (6th Cir. 2006) ...................................................... 41, 43

*Mercado v. Kingsley Area Schs./Traverse City Pub. Schs. Adult
  Educ. Consortium*,
  727 F. Supp. 335, (W.D. Mich. 1989) ................................................... 30

*Milliken v Bradley*,
  418 U.S. 717, (1974) ................................................................. 4, 45, 46

*Moore v Detroit School Reform Bd.*,
  293 F.3d 352 (6th Cir. 2002) ................................................................. 8

*Moore v Snyder*,
  unpublished opinion of the Michigan Court of Claims, issued August 4,
  2016 (Docket No. 16-000153-MM), slip op, pp 5, 8 ..................................... 22

*Ondo v. City of Cleveland*,
  795 F.3d 597 (6th Cir. 2015) .............................................................. 37

*Parsons v U.S. D.O.J.*,
  801 F.3d 701,  (2015).................................................................. 17, 18

*Patmon v. Michigan Supreme Court*,
  224 F.3d 504, 510 (6th Cir. 2000) ........................................................ 22

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, (1984).................. 19

*People v. DeJonge*,
  501 N.W.2d 127 (Mich. 1993) ............................................................. 13

*Phillips v Snyder*, 836 F.3d 707;
  2016 U.S. App. Lexis 16663, **2-8 (6th Cir. 2016)...................................6, 7

*Phillips,* U.S. App. LEXIS 16663, **2-8 .................................9, 42, 45, 46

*Plyler v. Doe,*
  457 U.S. 202,  (1982) .........................................................29, 33, 36, 44

*Quern v. Jordan,*
  440 U.S. 332,  (1979) ........................................................................19

*Range,*
  763 F.3d at 588 n. 6............................................................................27

*Realcomp II, Ltd. v. Ace Am. Ins. Co.,*
  46 F. Supp. 3d 736, (E.D. Mich. 2014)...............................................32

*Rodriguez,*
  411 U.S. at 29, ...........................................................................28, 33

*Rodriguez,* 411 U.S. at 24...................................................................34

*Rodriguez,* 411 U.S. at 32.............................................................29, 38

*Rodriguez,* 411 U.S. at 40-44..............................................................37

*Rodriguez,* 411 U.S. at 54-55..............................................................39

*Rooker v. Fidelity Trust Co.,*
  263 U.S. 413, 415 (1923) ...................................................................23

*Sailors v. Board of Educ.,*
  387 U. S. 105, (1967) ........................................................................10

*Samaad v. Dallas,*
  940 F.2d 925(5th Cir. 1991) ...............................................................43

*San Antonio Indep. Sch. Dist. v. Rodriguez,*
  411 U.S. 1 (1973) ................................................................................2

*Sanders Confectionery Prods. v. Heller Financial, Inc.,*
  973 F.2d 474,  (6th Cir. 1992) .............................................................24

*Sch. Dist. v. Sec'y of the U.S. Dep't of Educ.*,
  584 F.3d 253, 281-82 (6th Cir. 2009) ..................................... 3

*Schlesinger v. Reservists Comm. To Stop the War*,
  418 U.S. 208 (1974) ........................................................ 16

*Snyder v. Massachusetts*,
  291 U.S. 97, (1934) ........................................................ 35

*Stiles ex rel. D.S. v. Grainger County,
  Tenn.*, 819 F.3d 834, (6th Cir. 2016) ................................... 41

*Sung Park v. Ind. Univ. Sch. of Dentistry*,
  781 F. Supp. 2d 783, 789 (S.D. Ind. 2011) ............................. 31

*Tony L. By & Through Simpson v. Childers*,
  71 F.3d 1182, (6th Cir. 1995) ............................................ 34

*U.S. v. Hayes*,
  515 U.S. 737,  (1995) ................................................. 16, 17

*U.S. v. Hoffman*,
  926 F. Supp. 659,(W.D. Tenn. 1996), *aff'd,* 124 F.3d 200 (6th
  Cir. 1997) ................................................................... 34

*Washington v. Glucksberg*,
  521 U.S. 702,  (1997) ..................................................... 27

*Washington*,
  521 U.S. at 720 ............................................................ 35

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) ....................................................... 15

*Widdoes v Detroit Public Schools*,
  553 NW2d 688, 690-691 (Mich. Ct. App. 1996) ........................ 3

*Will v. Michigan Dep't. of State Police*,
  491 U.S. 58,  (1989) ....................................................... 20

*Yale Auto Parts v. Johnson*,
  758 F.2d 54, (2nd Cir. 1988) ............................................. 44

*Zeno v. Pine Plains Cent. Sch. Dist.*,
  702 F.3d 655 (2d Cir. 2012) ............................................................. 49, 50


**Statutes**

Mich. Comp. Laws 380.1282(1) ............................................................. 12

1927 Mich. Comp. Laws § 7273-7274 ..................................................... 8

Mich. Comp. Laws § 141.1549(2) ........................................................... 7

Mich. Comp. Laws § 141.931 *et seq* ..................................................... 10

Mich. Comp. Laws § 380.1 *et seq* ......................................................... 10

Mich. Comp. Laws § 380.1561(1) ........................................................... 13

Mich. Comp. Laws § 380.410(2) ............................................................. 9

Mich. Comp. Laws § 380.552(2) ............................................................. 14

Mich. Comp. Laws § 388.1705 ............................................................... 14

Mich. Comp. Laws § 388.1705c ............................................................. 14

Mich. Comp. Laws § 388.171 ................................................................. 8

Mich. Comp. Laws §§ 380.1278, 380.1246 ............................................... 7

Mich. Comp. Laws §§ 380.371-380.376 ................................................... 8

Mich. Comp. Laws §141.1540, *et. seq* ..................................................... 9

Mich. Comp. Laws 21.233(5) ................................................................. 3

Mich. Comp. Laws 380.11a(3)(a) ........................................................... 12

Mich. Comp. Laws 380.601a(1)(a) ......................................................... 12

**Rules**

34 C.F.R. § 100.3(b)(2) ..................................................................... 47

Fed. R. Civ. P. 12(b)(1) and (6) ...................................................... 24

## Constitutional Provisions

Mich. Const. 1963, art. 9, § 33 ........................................................ 3

Mich. Const. Art 8, § 2 ................................................................... 10

## CONCISE STATEMENT OF ISSUES PRESENTED

I.    Plaintiffs' claims against the Defendants non-justiciable.

    A. Plaintiffs lack standing to bring their claims.

    B. The Eleventh Amendment bars Plaintiffs' requested relief.

    C. Plaintiffs' claims are barred by the *Rooker/Feldman* doctrine.

II.   Plaintiffs' claims fail on the merits.

    A. Count I fails to state a claim against Defendants because there is no fundamental right to literacy.

    B. Count II fails to state a claim under the state-created danger doctrine.

    C. Count III fails to state a constitutional violation for equal protection based on race.

    D. Count IV fails to state a claim for discrimination under Title VI against the State of Michigan or any of its officers.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

<u>Authority</u>:   *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 29, 35 (1973); *Plyler v. Doe*, 457 U.S. 202, 221 (1982)

## STATEMENT OF FACTS

**Nature of the Case**

Plaintiffs seek injunctive, compensatory, and declaratory relief, claiming that the Governor of Michigan, members of the Michigan Board of Education, Michigan Superintendent of Public Instruction, Director of the Michigan Department of Technology, Management and Budget, and Michigan's State School Reform/Redesign Officer violated their right to literacy under the Fourteenth Amendment and Title VI of the Civil Rights Act. (Dkt. 1, Compl. Pg. ID 131–133.)  Plaintiffs ask this Court to require the State of Michigan to provide them and the putative class members attending five schools within the City of Detroit with compensatory and remedial education using a particular, "evidence-based" literacy program.

## ARGUMENT

**Background**

Plaintiffs' claims are inextricably premised on two erroneous legal assertions:  (1) that there is a fundamental right to literacy (Dkt. 1, Compl. ¶¶ 35-60); and (2) that the State of Michigan has been responsible for the operation of the schools in the City of Detroit since 1999. (Dkt. 1, Compl. ¶¶ 61–88 Pg. ID 46-62.) These assertions are without merit.

The United States Supreme Court and Michigan courts recognize the importance of literacy.  But as important as literacy may be, the United States Supreme Court has unambiguously rejected the claim that public education is a fundamental right under the Constitution.  See *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 29, 35 (1973).  Literacy is a component or particular outcome of education, not a right granted to individuals by the Constitution.

In the same vein, the Michigan Court of Appeals in *L.M. v. State*, 862 N.W.2d 246 (Mich. Ct. App. 2014), addressed the State of Michigan's role in public education under Michigan's constitution and laws and concluded that Michigan's constitution requires only that the Legislature provide for a system of free public schools, leaving the details and delivery of specific educational services to the local school districts.  *Id*. at 252–254 ("right to read" suit by the American Civil Liberties Union on behalf of students in Highland Park, asserting the State of Michigan was responsible for their failure to obtain basic literacy skills and reading proficiency in local schools.)[1]  And none of the Defendants here have ever operated, or been responsible for operating, local schools in Detroit.  *Id.*

Plaintiffs conflate appointment of local officials with state control of local schools. (Dkt , Compl, ¶¶ 67-70).  But school districts are a local government.

---

[1] Plaintiffs' counsel, Mark D. Rosenbaum, was also plaintiffs' counsel in the Michigan state court case.

See *Sch. Dist. v. Sec'y of the U.S. Dep't of Educ.*, 584 F.3d 253, 281-82 (6th Cir. 2009) (recognizing that school districts are local government units). See also Mich. Const. 1963, art. 9, § 33; Mich. Comp. Laws 21.233(5).  "No single tradition in public education is more deeply rooted than local control over the operation of schools[.]"  *Widdoes v Detroit Public Schools*, 553 NW2d 688, 690-691 (Mich. Ct. App. 1996) (citation omitted).  See also *Milliken v Bradley*, 418 U.S. 717, 741- 742 (1974).

**The Detroit School District's Legacy of Deficit and Enrollment Decline**

Public records demonstrate that the District's history of deficit and enrollment decline significantly predate 1999, the year Plaintiffs claim the State of Michigan "took over" the District.  (Dkt. 1, Compl., ¶ 68, Pg. ID 50.)  In its December 14, 1988 report the Select Panel on the Detroit Public Schools to the State of Michigan Board of Education noted:  "In eleven of the past fifteen fiscal years beginning July 1, 1972, the Detroit Public School District has reported a deficit general fund balance."  (Ex. 4, Select Panel 1988 Rpt., p II-1.)  The report found that by 1988 the district had a $103,000,000 deficit.

The report noted that the District's pupil enrollment had been declining steadily since at least 1981 when the District had in excess of 200,000 students— declining by 13.2 % from 1981 through 1988 alone.  (*Id.* at II-19.)  In 2008, The Council of Great City Schools report on Detroit Public Schools also noted a

3

significant decline in enrollment during the period it studied, 2003-2008, resulting in average reduction in state aid on a per pupil basis of $70.3 million. (Ex. 5, Council of Great City Schls. 2008 Rpt, p. 114.) That preexisting trend of declining enrollment continues today.

Over time, the population of the City of Detroit also shrank dramatically,[2] resulting in an ever-decreasing tax base. The problems were compounded by the collapse of the real estate market and taxable real estate values, and by the bankruptcies of the auto companies, with the concomitant loss in tax revenues—all in the context of the greatest recession since the great depression.

**Michigan's Successive Acts to Address Local Financial Distress**

Since 1988, Michigan law has provided for the emergency management of local governments that are experiencing fiscal distress: the Local Government Fiscal Responsibility Act, 1988 Mich. Pub. Acts 101. That legislation was consistent with the U.S. Advisory Commission on Intergovernmental Relations recommendations for greater state monitoring of, and involvement in, local fiscal affairs during financial crisis. As early as 1973, the Commission recognized that

---

[2] In 1990, city residents numbered 1,027,974. In 2000, they numbered 951,270, a 7.4% decrease from the 1990 figure. http://www.city-data.com/us-cities/The-Midwest/Detroit-Population-Profile.html. In 2010, the City had a population of just 713,777—a 24.9 % decrease from the 2000 figure. http://www.census.gov/quickfacts/table/PST045215/2622000.

"[i]n view of the favorable results that can occur when States are actively involved in municipal financial crisis, it is appropriate to suggest that all States should have laws providing for a State agency that will be responsible for at least the supervision of local government units in times of severe financial-emergency." (Ex. 6, *City Financial Emergencies: The Intergovernmental Dimension*, Advisory Commission of Intergovernmental Relations, July 1973, p. 80.) The Commission recommended that states should take a greater supervisory role over the financially distressed local government, including analyzing financial conditions, reviewing and approving the budget, requiring and approving a plan for liquidating current debt, accessing all records and books, acting as an agent for purposes of collective bargaining, and appointing a local finance administrator to exercise the powers of the state agency. (*Id*., pp. 80–81.) See also Ex. 7, *Phillips v Snyder*, 836 F.3d 707; 2016 U.S. App. Lexis 16663, **2-8 (6th Cir. 2016), in which the 6th Circuit recently described the evolution of those acts in Michigan providing for appointment of an individual to manage aspects of a local government.

**The State of Michigan Does Not Operate or Control Public Schools in the City of Detroit**

As the 6th Circuit recently noted in *Phillips,* states have absolute power to structure local governments and allocate powers among elected and non-elected leaders. *Phillips*, 2016 U.S. App. Lexis 16663 at **14-15, citations omitted. Thus,

whether a state system provides for appointed or elected officials does not change the local nature of a public school district or public school.

In Michigan, curricula and other essential daily programs are established and overseen by the local school board, the local superintendent, and the principal of each school.  Mich. Comp. Laws §§ 380.1278, 380.1246.  Contrary to Plaintiffs' assertions, the "State" never ran any of the schools, although emergency managers have been appointed to supplant *local* authority, where necessary.  Mich. Comp. Laws § 141.1549(2) ("Upon appointment, an emergency manager shall act for and in the place and stead of the governing body and the office of chief administrative officer of the *local* government."  Emphasis added.).  The characterization of Michigan's emergency managers as appointed *local* officials was affirmed very recently in *Phillips,* U.S. App. LEXIS 16663, **14-22, which also determined that their appointment, including the emergency manager for the Detroit Public Schools, was rationally related to the financial problems facing the local governments.

In fact, administration of the local schools in the City of Detroit has taken many forms over the last several decades.  Early on, each city was considered a school district and the City of Detroit had a seven-member board elected at large.  1927 Mich. Comp. Laws § 7273-7274.  In the 1970s, the school district was divided into eight geographic regions, each governed by a five-member regional

6

board of education and a Central Board consisting of 13 members—five members elected at large, the remainder made up of the eight regional chairs. 1970 Mich. Pub. Acts 48 (Mich. Comp. Laws § 388.171, et seq.) See *Bradley v. Milliken,* 402 F. Supp. 1096, 1104-1105 (E.D. Mich. 1975).

The district was again reorganized in 1999 eliminating the regional boards for a 7-member central Board, with six members appointed by the Mayor, and a chief executive officer. 1999 Mich. Pub. Acts 10, Mich. Comp. Laws §§ 380.371-380.376 (now repealed) to the Revised School Code. But it did not put the State of Michigan in charge of the school-district operations. See generally *Moore v. Detroit School Reform Bd.*, 293 F.3d 352 (6th Cir. 2002). The law also provided that after five years the residents of Detroit Public School District choose between two options for the Board's configuration and selection process. Mich. Comp. Laws § 380.410(2). In November 2004, the electors of the Detroit Public Schools voted in favor of an 11-member board, seven elected by district and four at large members.

The financial responsibilities for the District were then assumed by an Emergency Financial Emergency appointed under the authority of 1990 Mich. Pub Acts 72. Subsequently, the authority of the School Board was suspended completely by the appointment of an Emergency Manager under 2011 Mich. Pub. Acts 4 and then its successor law, 2013 Mich. Pub. Acts 436, Mich. Comp. Laws

§141.1540, *et. seq.*  But that Emergency Manager acts "for and in the place and stead of the governing body … of the local government," in this case the Detroit School Board.  Mich. Comp. Laws §141.1549(2).

As the *Phillips* court noted, Michigan has a long history of municipal financial crises following national and global economic depressions.  The court described how Michigan adopted a series of successive acts to address local financial distress beginning in 1988.  *Phillips,* U.S. App. LEXIS 16663, **2-8. The court noted that the key aspect of all these laws was that an appointed official acts on behalf of the local government.  *Id*. at **3-5 (emergency managers exercise power of the local government).  A state may appoint local officials, or elect them, or combine the elective and appointive systems.  *Sailors v. Board of Educ*., 387 U. S. 105, 111 (1967).  But use of an appointive system does not transform the local school district or other local government into a state administration and management.

Recently, to further address the Detroit Public Schools' historical, structural, financial and educational deficiencies, the Legislature amended the Revised School Code, Mich. Comp. Laws § 380.1 *et seq*  to create a new school district to be run by a locally elected board, leaving the existing district to pay off school debt.  2016

Mich. Pub. Acts 192, § 12b; Part 5B, §§ 381 to 396. [3]  2016 Mich. Pub. Acts 197

amended section 3(1)(b) of the Emergency Municipal Loan Act, Mich. Comp.

Laws § 141.931 *et seq*., to remove the prohibition of emergency loans to first class

school districts and add authorization for emergency loans to fund payment of a

significant portion of the debt and the cost of transitioning to the new district.

2016 Mich. Pub. Acts 193 provides a total of $617 million and will help restructure

the district, including $467 million to help pay off long-standing debt that has been

costing the districts $1,100 per pupil annually.  Another $150 million will be

available to improve facilities and invest in student achievement.  2016 Mich Pub.

Acts 192 provides an additional $250,000 for training and administration for the

newly-elected Detroit Public Schools Community District school board.

**The State of Michigan's Role in Public Education**

Michigan courts have addressed the State of Michigan's role in public

education under Michigan's constitution and laws, most recently in a very similar

suit brought in state court.  In *L.M.*, the Michigan Court of Appeals rejected the

plaintiffs' assertions that under Michigan's constitution, the State of Michigan was

responsible for providing literacy education to students in Highland Park School

District, which had an appointed emergency manager.  Like this case, plaintiffs

---

[3] Available at:  http://legislature.mi.gov/doc.aspx?2016-HB-5384 (bill documents
and analysis).

asserted that the State of Michigan was ultimately responsible for public education. But the court explained that the role of the state in education "is neither as direct nor as encompassing" as contended.  *L.M.,* 862 N.W.2d at 252-253.

The court explained that Michigan's constitution "only requires the 'legislature' to 'maintain and support a system of free public elementary and secondary schools,' with *a local school district having the responsibility to 'provide for the education of its pupils [.]'"  Id.*, quoting Mich. Const. Art 8, § 2 (emphasis added).  Finally, the court concluded that the Michigan constitution did not support a claim against the State Board of Education.  *Id.*

Contrary to Plaintiffs' assertions (Dkt. 1 ¶¶ 63-66), under the Michigan Constitution of 1963, article 8, §§ 2 and 3, there is a difference between direct control of a local school district and general supervision of the statewide system of public education.

The Michigan Legislature has long recognized that local school boards are responsible for educating their pupils.  Mich. Comp. Laws 380.11a(3)(a); Mich. Comp. Laws 380.601a(1)(a).  In fulfilling its constitutional duty to maintain and support a system of free public schools, the Legislature assigns the role of education to local school boards— "the board of a school district shall establish and carry on the grades, schools and departments it considers necessary or

10

desirable for the maintenance and improvement of its schools and determine the courses of study to be pursued." Mich. Comp. Laws 380.1282(1).

**Additional Educational Options in Michigan**

Michigan law generally requires children aged 6 through 16 or 18 to attend public schools. Mich. Comp. Laws § 380.1561(1). There are few exceptions to this requirement, such as when a child attends an approved nonpublic school or is "homeschooled" by a parent or legal guardian. Mich. Comp. Laws 380.1561(3). Parents who homeschool their children need not be certified teachers. *People v. DeJonge*, 501 N.W.2d 127 (Mich. 1993).

In 1993, the Michigan Legislature passed the Charter Schools Act, 1993 Mich. Pub. Acts 362, which permitted the creation of public school academies. The Act was challenged by opponents who claimed that funding such academies illegally permitted public funds to support private, nonpublic schools. *Council of Orgs. & Others For Ed. About Parochiaid v. Engler*, 566 N.W.2d 208 (Mich. 1997). The Michigan Supreme Court upheld the act and concluded that charter schools are public schools, and charter schools have existed in Michigan ever since. *Id.* at 222. In fact, two of the schools at issue in this case, Hamilton Academy and Experiencia Preparatory Academy, are public charter schools and are not part of the Detroit Public Schools Community District. (Dkt. 1, Compl. ¶

2.) Parents may voluntarily choose to enroll their children in charter schools as an alternative to the school where they reside.

Michigan law also provides a "school of choice" option—local school districts may admit a student that does not reside in that district, if the student resides within the same intermediate school district or a contiguous intermediate school district.  Mich. Comp. Laws § 388.1705; Mich. Comp. Laws § 388.1705c.

One other educational option available to Michigan students and their parents is charter cyber schools.  See Mich. Comp. Laws § 380.552(2).  Cyber schools "provide full-time instruction to pupils through online learning or otherwise on a computer or other technology, and this instruction and learning may occur remote from a school facility."  Mich. Comp. Laws 380.553a(1).

**Issues Presented**

**I.      This Court lacks jurisdiction because Plaintiffs lack standing and Defendants have Eleventh Amendment Immunity.**

**A.     Plaintiffs lack standing to bring their claims.**

Standing is a threshold requirement for invoking federal-court jurisdiction. *Binno v. American Bar Assoc.*, 826 F.3d 338, 344 (6th Cir. 2016).  For standing to exist, a plaintiff must show:  (1) a "concrete, particularized, and actual or imminent" injury; (2) that is "fairly traceable" to the defendant's alleged conduct;

12

and (3) that the court could redress by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992).

The injury necessary to invoke constitutional standing must be concrete and palpable, not merely abstract or hypothetical. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). Generalized grievances "against allegedly illegal governmental conduct" are insufficient. *U.S. v. Hayes*, 515 U.S. 737, 743 (1995). Instead, there must be a "real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Schlesinger v. Reservists Comm. To Stop the War*, 418 U.S. 208, 221 (1974). Otherwise, allowing courts to oversee legislative or executive action "would significantly alter the allocation of power . . . away from a democratic form of government[.]" *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

As an initial matter, Plaintiffs have not demonstrated an invasion of any legally protected interest. *See Lujan*, 504 U.S. at 560–561. As discussed in detail below, federal courts have never deemed literacy to be a legally protected interest.

Moreover, Plaintiffs have not shown an injury that is concrete and particularized, or even actual or imminent. *Id.* For example, three of the named Plaintiffs—Cristopher R., Isaias R., and Esmerelda V.—attended Experiencia Preparatory Academy, which closed at the conclusion of the 2015-2016 school year. Plaintiffs do not state where these three Plaintiffs currently attend school, so

13

they have not demonstrated an actual or imminent injury.  And those Plaintiffs who remain in Detroit schools fail to identify anything Defendants are affirmatively doing to violate their alleged right to literacy.  Instead, Plaintiffs make a generalized grievance against the State of Michigan's education system, which is insufficient.  *See Hayes*, 515 U.S. at 743.

Regarding traceability, standing is more difficult to establish when the injury is indirect.  *Parsons v U.S. D.O.J.*, 801 F.3d 701, 713 (2015).  "The causation requirement of the constitutional standing doctrine exists to eliminate those cases in which a third party and not a party before the court causes the injury."  *Am. Canoe Ass'n v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 543 (2004).

Here, Plaintiffs cannot show that their illiteracy is "fairly traceable" to Defendants' conduct.  *Lujan*, 504 U.S. at 560-61.  While pointing the finger at Defendants, Plaintiffs ignore many other factors that contribute to illiteracy, such as poverty, parental involvement (or lack thereof), medical problems, intellectual limitations, domestic violence, trauma, and other numerous influences.  In the face of these many forces, Plaintiffs have not alleged any facts that would support finding a causal link between Defendants' acts and Plaintiffs' alleged illiteracy, so they have not demonstrated standing in this case.  *Am. Canoe Ass'n*, 389 F.3d at 543.

Regarding redressability, an injury is only redressable if a court order can provide "substantial and meaningful relief" to the plaintiff. *Parsons*, 801 F.3d at 715. To demonstrate redressability, a plaintiff must show that "a favorable decision will relieve a discrete injury[.]" Id. Redressability is difficult to establish "where the prospective benefit to the plaintiff depends on the actions of independent actors." *Id.*

Here, Plaintiffs request extensive injunctive relief, but their Complaint offers only speculation that their proposed remedy will redress their alleged injury of illiteracy. *See Lujan*, 504 U.S. 560–61. The proposed injunction will not provide substantial and meaningful relief because it does not take into account the other socioeconomic, intellectual, and personal factors affecting literacy. *See Parsons*, 801 F.3d at 715. Even if Plaintiffs receive a favorable decision, it is unclear whether the children's individual injuries will be relieved; there is no guarantee that the children will become literate.

## B.      The Eleventh Amendment bars Plaintiffs' requested relief.

The Eleventh Amendment bars suits for monetary relief by any individual against a state in federal court, unless the state has expressly waived its immunity. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-101 (1984). Federal courts lack

15

jurisdiction over suits brought against the states without their consent. *Alden v. Maine*, 527 U.S. 706, 730 (1999).

Here, Defendants have not waived their Eleventh Amendment immunity, nor does § 1983 expressly abrogate it. *Quern v. Jordan,* 440 U.S. 332, 350 (1979); *Will v. Michigan Dep't. of State Police,* 491 U.S. 58, 64-66 (1989). Thus, the Eleventh Amendment bars jurisdiction over Plaintiffs' § 1983 claims. State agencies and their officials, including Defendants, are not "persons" under 42 U.S.C. § 1983, *Will*, 491 U.S. at 71, and "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Although *Ex Parte Young*, 209 U.S. 123, 155-156 (1908), allows suits against state officials to enforce (equitably and prospectively) federal law, the Eleventh Amendment applies to preclude individuals from bringing suit against state officials when the suit seeks "accrued monetary liability which must be met from the general revenues of a State." *Edelman v. Jordan*, 415 U.S. 651, 666 (1974). A federal court may not order "retroactive payment of benefits found to have been wrongfully withheld." *Id.* at 678. The relief requested may not represent "a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials." *Id*. at 668.

16

Plaintiffs ask this Court to order Defendants to reconstruct schools, establish a "system of statewide accountability," and guarantee literacy through a judicial overhaul of the educational practices in Plaintiffs' schools. (Dkt. 1, Compl., ¶¶ 166–190, Pg. ID 113–122, 131–132.) Plaintiffs' request for relief does not resemble a request for a prospective declaration of rights as much as an expensive attempt to procure an improper remedy for an alleged past breach. *See Edelman*, 415 U.S. at 668. Because Plaintiffs seek an improper retroactive remedy, Defendants' are immune from their claims under the Eleventh Amendment.

### C.     Plaintiffs' claims are barred by the *Rooker/Feldman* doctrine.

Plaintiffs' pleadings fail to account for a previous class action filed in state court. Among other things, the previous suit challenged many of the state actions at issue in this case, including the most recent passage of 2016 Mich. Pub. Acts 192. This act eliminated the Education Achievement Authority and allowed the not-yet-seated school board to hire non-certificated teachers. The suit raised various challenges, including the violation of state and federal constitutional rights to due process and equal protection. See *Moore v. Snyder* Complaint, Michigan Court of Claims Docket No. 16-000153-MM, Ex. 8. The case sought to include all children of the Detroit Public Schools (including Plaintiffs named here), and it was dismissed. Ex. 9, *Moore v. Snyder*, unpublished opinion of the Michigan Court of Claims, issued August 4, 2016 (Docket No. 16-000153-MM), slip op, pp 5, 8.

17

Plaintiffs have not appealed those proceedings.  A United States District Court is without authority to review final judgments of state judicial proceedings, which is precisely what Plaintiffs ask this Court to do.  *See Patmon v. Michigan Supreme Court*, 224 F.3d 504, 510 (6th Cir. 2000); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 486 (1983).

United States District Courts do not have subject-matter jurisdiction to review the legality or propriety of a state court's orders.  *Feldman,* 460 U.S. at 486.  The U.S. Supreme Court has exclusive jurisdiction to review state court proceedings for constitutional violations.  28 U.S.C. § 1257; *Feldman,* 460 U.S. at 482-486; *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415-416 (1923).  Although the only finalized ruling at this point is the Michigan Court of Claims dismissal, the *Rooker-Feldman* doctrine has direct application to cases where, as here, "state-court losers" are seeking to undo the effects of the state judicial ruling.  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005).  In *Moore*, the court specifically ruled that the Plaintiffs' equal protection claim was improperly raised against "Governor Snyder" rather than "the appropriate official" of the Detroit school district.  Ex. 9, *Moore v. Snyder*, slip op, p 5.  Here, Plaintiffs again allege that the State Defendants, including Governor Snyder, are the appropriate officials to name in their equal protection and due process suit.  Such a reversal of a state-court decision is barred by the *Rooker-Feldman* doctrine.

These same principles—a final judgment by a tribunal with jurisdiction, Plaintiffs' ability to raise and resolve the issues in their state proceedings, and the similarity in the underlying facts—also mean that Plaintiffs' claims are barred by *res judicata*. *Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 193 F.3d 415, 422 (6th Cir. 1999); *Sanders Confectionery Prods. v. Heller Financial, Inc.,* 973 F.2d 474, 483-484 (6th Cir. 1992). Either way, this case should be dismissed because this Court lacks jurisdiction over the subject matter of this Complaint. Fed. R. Civ. P. 12(b)(1) and (6).

## II.   Plaintiffs fail to state a cause of action against Defendants.

As an initial matter, Plaintiffs claim relief from all 12 Defendants as if they were all acting in unison but fail to distinguish among each Defendant's alleged actions, liabilities, or responsibilities.[4] This failure to attribute any specific conduct to any particular Defendant warrants dismissal of the Complaint. *See* Ex. 3, *Darwich v. Dearborn*, No. 10-14073, 2011 U.S. Dist. LEXIS 49724, at * 7 (E.D. Mich. May 10, 2011). And the Complaint should be dismissed because it simply

---

[4] In sum, the counts allege: (1) violation of the Due Process and Equal Protection clauses of the Fourteenth Amendment, under § 1983, based on a proposed "fundamental right" of access to literacy; (2) state-created danger under § 1983; (3) racial discrimination under § 1983 based on the Equal Protection Clause of the Fourteenth Amendment; (4) violation of Title VI of Civil Rights Act, 42 U.S.C. § 2000d and 34 C.F.R. § 100.3(b)(2); (5) declaratory relief. (Dkt. 1, Compl. ¶¶ 199–215, Pg. ID 126–130.)

19

offers a list of federal rights that one or more Defendants allegedly violated.  Ex. 1,

*Fernanders v. Mich. Dep't of Military & Veterans Affairs,* No. 12-11752, 2012

U.S. Dist. LEXIS 111872 at *7 (E.D. Mich. Aug. 9, 2012).  Moreover, as

explained below, Plaintiffs fail to state claims for each count of the Complaint, so

their claim for declaratory relief necessarily fails as well.

### A.      There is no fundamental right to literacy (Count I).

Plaintiffs ask this Court to recognize—for the first time in our nation's

history—a fundamental right to a specific educational outcome.  This request

stands in stark contrast to the rights that American courts have recognized in the

past, which rest on an individual's freedom to participate in society on an equal

basis without undue state interference.  Instead of seeking protection from the

State, Plaintiffs insist, without any support in case law or the text of the

Constitution, that literacy and "access to literacy" are "fundamental right[s]" that

the State *must* provide to every individual.[5]  (Dkt. 1, Compl. ¶¶ 35–60, 200, Pg. ID

27–46, 126–127.)

---

[5] Recognizing the right to literacy as framed by Plaintiffs would mean that the
State must provide, at untold expense, every man, woman, and child (including
infants and others with limited psychological or mental capacity), the *power* to
read (presumably non-braille English).  Judging by the Complaint, Plaintiffs also
demand a particular, but unstated, level of proficiency.  At some point, imposing
the requirements on the State will also mean imposing the requirements on the
individuals, whether they want them or not.

Government conduct violates substantive due process only if it deprives an individual of a particular constitutional guarantee. Ex. 10, *Lyda v. City of Detroit (In re City of Detroit)*, 2016 U.S. App. LEXIS 20397 at *32 (6th Cir. November 14, 2016) (there is no fundamental right to water service), citing *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014). "Substantive due process affords only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental." *In re City of Detroit*, 2016 U.S. App. LEXIS 20397 at *31-*32, quoting *EJS Props., L.L.C. v. City of Toledo*, 698 F.3d 845, 862 (6th Cir. 2012). "Thus, 'the list of fundamental rights is short,' *Grinter v. Knight*, 532 F.3d 567, 563 (6th Cir. 2008), and seldom expanded, *see Washington* [*v. Glucksberg*, 521 U.S. 702, 720 (1997)]." *In re City of Detroit*, 2016 U.S. App. LEXIS 20397 at *32. "Most state-created rights that qualify for due process protections do not rise to the level of substantive due process protection." *Range*, 763 F.3d at 588 n. 6.

The claimed right of "access to literacy" is a mere proxy for a right to education, which has long been rejected as a fundamental right. *See Rodriguez*, 411 U.S. at 29, 35. And the claimed right to literacy itself not only presupposes the nonexistent right to education, but also asks that the Constitution be used to guarantee the outcome of the educational process.

21

### 1.    Courts have long rejected claims to a fundamental right of education.

The Supreme Court squarely addressed "whether education is a fundamental right . . . protected by the Constitution" and unambiguously held that no such right exists. *Rodriguez*, 411 U.S. at 29, 35.  Although the Court acknowledged the importance of education, it cautioned that "the importance of a service performed by the State does not determine whether it must be regarded as fundamental." *Id*. at 30.  Otherwise, courts become "'super-legislature[s],'" taking a legislative role for which they lack "both authority and competence." *Id*. at 30–31(internal citation omitted).

Moreover, "'the Constitution does not provide judicial remedies for every social and economic ill.'" *Id*. at 32, quoting *Lindsey v. Normet*, 405 U.S. 56, 74 (1972).  For example, although it may be important to have shelter in which to live, the Constitution does not create such a right. *Rodriguez*, 411 U.S. at 32.  Indeed, courts must refrain from creating "substantive constitutional rights in the name of guaranteeing equal protection of the laws." *Id*. at 33.  Rather, courts must look at the Constitution itself to determine whether "a right to education is explicitly or implicitly" guaranteed. *Id*.  The Supreme Court determined that there was no express or even implied fundamental right to education. *Id*. at 35.

Nine years later, the Court again addressed this issue and reached the same conclusion:  "Public education is not a 'right' granted to individuals by the

Constitution." *Plyler v. Doe*, 457 U.S. 202, 221 (1982). And in 1988 the Court once again reaffirmed *Rodriguez* by noting that education is not a fundamental right subject to strict scrutiny. *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 458 (1988).

This Court and its sister court—the Western District of Michigan—have likewise held that, although education is important, it is not a fundamental right under either the United States Constitution or the Michigan Constitution. *Martin Luther King, Jr., Elementary School Children in Green Rd. Hous. Project v. Michigan Bd. of Educ.*, 451 F. Supp. 1324, 1328 (E.D. Mich. 1978); *Mercado v. Kingsley Area Schs./Traverse City Pub. Schs. Adult Educ. Consortium*, 727 F. Supp. 335, 345 (W.D. Mich. 1989).

This constitutional interpretation has been affirmed by federal courts throughout the country. *E.g. Doe v. L.A. Unified Sch. Dist.*, No. 2:16-cv-00305-CAS, 2016 U.S. Dist. LEXIS 66291 (C.D. Cal. 2016) (Ex. 11); *Davids v. N. Iowa Cmty. Sch. Dist.*, Case No. 14-3002-MWB, 2015 U.S. Dist. LEXIS 92421 (N.D. Iowa 2015) (Ex. 12); *Sung Park v. Ind. Univ. Sch. of Dentistry*, 781 F. Supp. 2d 783, 789 (S.D. Ind. 2011); *M.G. v. Crisfield*, 547 F. Supp. 2d 399, 408 (D. N.J. 2008); *Galdikas v. Fagan*, 342 F.3d 684, 690 n.3 (7th Cir. 2003). Plaintiffs provide no reason to deviate from this principle.

### a.   The claimed right of "access to literacy" is merely a proxy for education.

Plaintiffs claim both a fundamental right to literacy and "access to literacy." (Dkt. 1, Compl. ¶¶ 35–60, 200, Pg. ID 27–46, 126–127.)  "Access to literacy" is merely a proxy to establish the long-rejected "fundamental right" to education.

In seeking the ordinary meaning of Plaintiffs' terms, it is appropriate to use a dictionary.  *Realcomp II, Ltd. v. Ace Am. Ins. Co.*, 46 F. Supp. 3d 736, 742–43 (E.D. Mich. 2014); *Barlow v. Logos Logistics, Inc.*, 34 F. Supp. 3d 686, 693 (E.D. Mich. 2014).  "Literacy" means "the quality or state of being literate," which itself means "able to read and write."  Webster's Third New International Dictionary __ ed. (1986).  And "access" means "freedom or ability to obtain or make use of."  *Id.*

Applying those ordinary definitions here, Plaintiffs ask this Court to recognize a fundamental right of "freedom or ability to obtain or make use of . . . the quality or state of being . . . able to read and write."  *Id.*  In itself, this means nothing, because a person cannot "obtain or make use of" literacy without going through the *process* of becoming literate.  And that process is education.

"Education" refers to "the act or process of providing with knowledge, skill, competence, or usu[al] desirable qualities of behavior or character or of being so provided esp[ecially] by a formal course of study instruction, or training."  *Id.*  Thus, "education" is necessarily a condition precedent to "literacy" and presupposes it, and "access to literacy" means nothing more than "education."

Indeed, the detailed description of "literacy" offered by Plaintiffs, and the remedies they request, definitively show that they understand literacy to be a product of the process of education.  (Dkt. 1, Compl. ¶¶ 36–43, 164–188, Pg. ID 28–33, 112–121, 131–132.)[6]  Therefore, Plaintiffs' claimed right to "access to literacy" is a thinly veiled assertion of the long-rejected right to education, and their claims should be dismissed.  *Plyler*, 457 U.S. at 221; *Rodriguez*, 411 U.S. at 29, 35.

### b.    The claimed right to literacy goes far beyond the right to education and asks this Court to guarantee an educational outcome.

Although Plaintiffs claim a nonexistent right to "access to literacy," they go much farther by also asserting a right to literacy itself.  (Dkt. 1, Compl. ¶¶ 36-43, 200 Pg. ID 28-33, 126-127, 131-132.)  Because literacy is an outcome of education, it presupposes the consistently rejected right to education.  This Court should reject this extraordinary invitation to expand the Constitution to require not only education, but its effective reception and application.

Plaintiffs develop in detail what they understand "literacy" to mean.  (Dkt. 1, Compl. ¶¶ 36–43, 164–188, Pg. ID 28–33, 112–121, 131–132.)  But "in view of

---

[6] For instance, Plaintiffs demonstrate that they understand "literacy" as an outcome of "education" by requesting "[i]mplementation of evidence-based programs for literacy instruction and intervention" in schools.  (Dkt. 1, Compl., Pg. ID 129–130.)

25

the infinite variables affecting the educational process" it is impossible to "assure equal quality of education except in the most relative sense." *Rodriguez*, 411 U.S. at 24. Similarly, courts, including this Court, have refused to recognize a right to "a particular substantive outcome," even where a procedural right exists. *See, e.g.*, *Tony L. By & Through Simpson v. Childers*, 71 F.3d 1182, 1185 (6th Cir. 1995). In *Tony L. By & Through Simpson*, this Court explained that just because voting and free speech are important rights that are "afforded zealous protection" by the Court, that does not mean that individuals have the right to "the most effective speech or the most informed electoral choice." *Id*. at 36. Similarly, although the Constitution provides a right to the effective assistance of counsel, it does not guarantee that counsel will successfully secure an acquittal. *U.S. v. Hoffman*, 926 F. Supp. 659, 672–73 (W.D. Tenn. 1996), *aff'd*, 124 F.3d 200 (6th Cir. 1997). Plaintiffs' claim that they are constitutionally entitled to a result fails, and their Complaint should be dismissed.

### 2. No textual or case-law authority exists for the "fundamental right" Plaintiffs claim.

Federal courts have never recognized a fundamental right to "literacy" or "access to literacy," and the Supreme Court has expressed reluctance in extending constitutional protections, noting that by recognizing a right as fundamental, it "place[s] the matter outside the arena of public debate and legislative action . . . ."

*Washington*, 521 U.S. at 720.  Accordingly, the Court looks to see whether the asserted right is "so rooted in the traditions and conscience of our people as to be ranked as fundamental[.]"  *Id.,* citing *Snyder v. Massachusetts*, 291 U.S. 97, 105 (1934).  While literacy is important, it is not traditionally a "right."  Further, in determining whether a right is fundamental, judicial self-restraint requires courts to focus on the plaintiff's description of the right and what the government allegedly did to deprive the plaintiff of that right.  *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).  Here, despite Plaintiffs' passionate plea alleging that literacy is a fundamental right, they do not allege what these Defendants did to deprive Plaintiffs of literacy.

Assuming *arguendo* that "literacy" is a fundamental right, Plaintiffs have not and cannot show that Defendants have taken some action to deprive Plaintiffs of literacy.  Instead, Plaintiffs argue that Defendants must affirmatively *provide* certain resources to Plaintiffs to ensure they attain "literacy."  For example, Plaintiffs argue that the State has "failed to ensure that Plaintiffs schools have basic school supplies."  (Dkt 1 Compl. Pg ID 11, ¶ 11.)  But again, the Constitution does not provide Plaintiffs an affirmative right to governmental aid, even if governmental aid may be necessary to secure a fundamental right.  *Deshaney v. Winnebago County Dep't of Social Services,* 489 U.S. 189, 196 (1989).  While Defendants cannot completely deprive Plaintiffs of an education by refusing them

27

enrollment in public schools, *Plyler*, 457 U.S. at 230, Plaintiffs do not have a

corresponding entitlement to financial resources to ensure they are literate. *Harris*

*v. McRae*, 448 U.S. 297, 316 (1980).

### 3. Plaintiffs' claim does not survive the applicable rational basis review.

Because education is not a fundamental right, rational basis review applies.

*Rodriguez*, 411 U.S. at 40-44; *In re City of Detroit*, 2016 U.S. App. LEXIS 20397

at *33. Thus, because no fundamental right is involved in Count I, Plaintiffs must

show that Defendants' actions "are not rationally related to a legitimate state

purpose." *Martin Luther King, Jr., Elementary School Children*, 451 F. Supp at

1328. *Ondo v. City of Cleveland*, 795 F.3d 597, 608 (6th Cir. 2015). The Plaintiffs

must negate every conceivable basis which might support it. *Heller v. Doe*, 509

U.S. 312, 320 (1993). "A State, moreover, has no obligation to produce evidence

to sustain rationality of a statutory classification." *Id*. And the *Heller* standard

applies at the pleading stage and "a plaintiff must allege facts sufficient to

overcome the presumption of rationality" in the Rule 12(b)(6) context. *In re City*

*of Detroit, Mich.*, 2016 U.S. App. LEXIS 20397 at *36, citations omitted.

In the present case, other than nomenclature, Plaintiffs' claim is not

substantially different from the argument raised in *Rodriguez*. Both boil down to a

dispute with a state's method of school financing, because Plaintiffs allege

Defendants have violated the Constitution by failing to provide—that is, pay for—their preferred educational policies, such as "Evidence-Based Reforms." (Dkt. 1, Compl. ¶¶ 112-190, Pg. ID 81-122.)[7] Defendants, however, did not determine how Plaintiffs' schools should spend their funds.[8]

Michigan's system is similar to that upheld in *Rodriguez*; in both instances, the state provides funding to overcome economic disparities between districts. *See Rodriguez*, 411 U.S. at 7–14. Michigan's system, however, better addresses disparities in local funding sources by providing most districts funding through per-pupil grants supplementing local funds, thus moderating financial disparities between districts.

Michigan's system of school finance, like the Texas system at issue in *Rodriquez*, are meant "to extend public education and improve its quality." *See Id.* at 39. And education is "an area in which [courts] have traditionally deferred to state legislatures." *Id.* at 40. The mere fact that a state's efforts to provide and improve educational opportunities fail to meet Plaintiffs' rather lofty expectations

---

[7] The paragraphs cover different types of allegations: ¶¶ 112–118 (text books); ¶¶ 119–137 (physical condition of the schools); ¶¶ 138–140 (trauma and emotional health); ¶¶ 141–144 (English language instruction); ¶¶ 145–154 (teaching staff); ¶ 155 (uncertified teachers); ¶¶ 156–163 (charter schools and school closures); ¶¶ 164–190 (failure to provide "Evidence-based reforms").

[8] To the extent that blame can be affixed to the conditions of Plaintiffs' schools, it would seem best placed on the local school district that received the funds and chose how to spend them.

29

does not render it unconstitutional. *Martin Luther King, Jr., Elementary School Children*, 451 F. Supp. at 1328. Nor is a system unconstitutional because disparities exist or it is otherwise imperfect. *Rodriguez*, 411 U.S. at 54-55. Michigan has a rational basis for its system of school financing—adequate funding without over-reliance on local funding sources. Public education is a legitimate state purpose. Michigan's system therefore passes constitutional muster.

## B.    Plaintiffs fail to state a claim under the state-created danger doctrine (Count II).

Plaintiffs' state-created danger claim is based on the allegation that Defendants violated their Fourteenth Amendment rights by failing to protect them from dangerous conditions. (Dkt. 1, Compl. ¶¶ 81, 128–134, 135–137, 189, Pg. ID 57, 90–97, 97–98, 121.) A "state-created-danger" claim requires: (1) an affirmative act by the state, which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff where the state's actions placed the plaintiff specifically at risk, as distinguished from a risk affecting the public at large; and (3) that the State knew or should have known that its actions specifically endangered the plaintiff. *Jones v. Reynolds*, 438 F.3d 685, 690 (6th Cir. 2006). Plaintiffs cannot meet these requirements.

30

Plaintiffs fail to establish the first element because their claim is not premised on an affirmative act by Defendants, but rather on an alleged failure to act.  And they do not assert any harm or increased risk of harm from a violent act of a private, third party.  Instead, they assert poor physical conditions in the schools Plaintiffs attend.  (Dkt. 1, Compl. ¶¶ 81, 128–134, 135–137, 189, Pg. ID 57, 90–97, 97–98, 121.)  Plaintiffs also allege that defendants "abdicated" a responsibility to keep one school—Marion Law Academy—safe and hygienic. (Dkt. 1, Compl. ¶ 81, Pg. ID 57.)  They make no specific allegation with regard to any other school.

But the first element clearly requires an affirmative act by the state.  A mere failure to act "is not an affirmative act under the state-created danger theory." *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003) (no affirmative act when police removed intoxicated plaintiff from side of road and placed him in parking lot); *see also Stiles ex rel. D.S. v. Grainger County, Tenn.*, 819 F.3d 834, 854-855 (6th Cir. 2016) (failure to stop bullying not an affirmative act); *Jones*, 438 F.3d at 691-692 (failure to stop drag race that resulted in death not an affirmative act); *McQueen v. Beecher Cmty Schls*,  433F.3d 460, 465-466 (6th Cir. 2006) (no affirmative act where teacher left students alone and one student fatally shot another student).  Where state actors merely maintain the status quo, the first element cannot be met.  *Bukowski v. City of Akron*, 326 F.3d 702, 709.

31

Moreover, even as alleged, the failure to act that Plaintiffs believe led to the physical condition of Plaintiffs' schools cannot be attributed to Defendants because they do not operate the schools at issue. The State merely provides funding and sets broad curriculum and achievement parameters. *L.M.*, 862 N.W.2d at 252-254. And decisions of emergency managers are those of the local government, not of the State. *Kincaid v. City of Flint*, 874 N.W.2d 193, 201 (Mich. App. 2015); *Phillips,* 2016 U.S. App. LEXIS 16663, at **14-15. Thus, the local school district's allocation of resources to and among its schools cannot be attributed to Defendants.

Nor can Plaintiffs establish the second element, because they cannot establish that Defendants' actions placed them in "special danger" such that "the government could have specified whom it was putting at risk, nearly to the point of naming the possible victim or victims." *Jones*, 438 F.3d at 696. There are no specific allegations that Defendants' actions singled out *these* specific Plaintiffs or members of the putative Plaintiffs' class and placed them specifically at a risk of special danger.

Plaintiffs similarly cannot establish the third element because they have not specifically alleged that Defendants knew, or should have known, that the physical condition of Plaintiffs' schools specifically endangered these Plaintiffs. *Id.* at 690. This requires Plaintiffs to show a level of culpability sufficient "to establish a

substantive due process violation." *Hunt v. Sycamore Cmty Schl Dist. Bd. of Educ.*, 542 F.3d 529, 535 (6th Cir. 2008), citing *McQueen*, 433 F.3d at 469.  But "'only the most egregious official conduct'" meets this standard.  *Hunt*, 542 F.3d at 535, citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).  Plaintiffs have not alleged any egregious conduct by any of the named Defendants, so their claims fail.

**C.    Plaintiffs fail to state a constitutional violation for equal protection based on race (Count III).**

In Count III, Plaintiffs Defendants violated their Equal Protection rights. The Equal Protection Clause bans racially-motivated differential treatment, *Samaad v. Dallas*, 940 F.2d 925, 941 (5th Cir. 1991), requiring equal treatment of persons similarly situated.  *Plyler*, 457 U.S. at 216.  But its protection reaches only to dissimilar treatment among similar people.  *Samaad*, 940 F.2d at 941.  If the government action does not appear to classify or distinguish between two or more relevant persons or groups, the action does not deny equal protection of the laws. *Samaad*, 940 F.2d at 941.

Accordingly, these Plaintiffs must allege the actual existence of a similarly situated group of persons to state a claim for equal protection.  *Yale Auto Parts v. Johnson*, 758 F.2d 54, 61 (2nd Cir. 1988).  No viable equal protection claim exists absent a threshold showing that plaintiffs are similarly situated to those who

33

allegedly received favorable treatment.  *Klinger v. Department of Corrections,* 31 F.3d 727, 731 (8th Cir. 1994).

As a threshold matter, Plaintiffs' complaint fails because it doesn't allege that they were treated differently than other students in their respective school district because of race.  Instead, Plaintiffs allege that, on the basis of race, they received differential treatment from "other students in the State of Michigan receiving education in Michigan Public Schools."  (Dkt. 1, Compl. ¶¶ 200, 207, Pg. ID 126–128.)  But this is not the appropriate comparison group.  Plaintiffs cannot rely on alleged disparate treatment with other, different Michigan schools outside the Detroit district; instead, they must rely on alleged disparate treatment within the relevant district.  See *Phillips*, 2016 U.S. App. LEXIS 16663, at **21-28)(plaintiff must demonstrate disparate treatment within their respective jurisdiction and comparison to individuals in other jurisdictions are not relevant); *Milliken*, 418 U.S. at 741–742.

Properly limiting the issue to the Detroit district, the specific-named Plaintiffs are allegedly of Latino and African-American heritage and have attended Hamilton, Experiencia, Osborn MST, Osborn College Preparatory Academy, Osborn Evergreen and Cody MCH.  While each of these schools has a large African-American and Latino student population, each of the named Detroit schools also serve white or non-Hispanic students.  (Dkt. 1, Compl. ¶ 90, Pg. ID

62-63.)  Given these alleged facts, Plaintiffs have failed to identify the existence of a similarly situated group of students within these schools or within the Detroit district, generally, who have received favorable treatment on the basis of their race. Thus, as a threshold matter Count III fails because Plaintiffs do not allege that they are treated differently than students attending other schools in Detroit.  See *Phillips*, 2016 U.S. App. LEXIS 16663, at **21-28; *Milliken*, 418 U.S. at 741-742.

Moreover, to state an equal protection claim, "a plaintiff must adequately plead that the government treated the plaintiff disparately because of race.  *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).  The Complaint includes numerous allegations of inadequate school buildings and facilities, insufficient instructional materials, such as course offerings, textbooks and other basic school supplies, as well as unsafe or unsanitary physical conditions and extreme temperatures within these specific schools.  Plaintiffs allege that these deficiencies make learning nearly impossible for Plaintiffs.  Yet these same conditions equally affect all students within the same schools regardless of race. Plaintiffs' Equal Protection claim fails because there simply is no similarly situated group of white or non-minority students at the named Detroit schools who have experienced different conditions than Plaintiffs.  To the contrary, all the schools have some percentage of white or non-Hispanic students in their populations, and Plaintiffs make no allegation that non-children-of-color receive better facilities or

35

instruction at the named schools, much less that Defendants knew of the disparity and failed to take measures to remedy it. Therefore, Plaintiffs' equal protection claims fail as a matter of law.

> **D.    Plaintiffs' Title VI claims must be dismissed because they have failed to state a discrimination claim against the State of Michigan or any of its officers (Count IV).**

In Count IV, Plaintiffs claim that Defendants discriminated against the children in the former Detroit Public School system on the basis of their race, and that this discrimination constitutes a violation of Title VI, 42 U.S.C. § 2000d, and 34 C.F.R. § 100.3(b)(2).

As an initial matter, reference to the C.F.R. offers no harbor for Plaintiffs' claims because Congress did not intend to provide a private cause of action for the enforcement of *regulations* under Title VI. *Alexander v. Sandoval,* 532 U.S. 275, 291 (2001). Thus, any claims related to the C.F.R.s against the State or its officers are barred. *Id.* at 293.

Looking to Title VI itself, Plaintiffs' claims fail for lack of any allegation that the State or its officers have intentionally discriminated against the children of Detroit on the basis of race—or any other protected classification. *Id*. at 280; 42 U.S.C. § 2000d; 42 U.S.C. § 2000d-7. Plaintiffs' claim under Title VI fails to make any allegations that Defendants intentionally discriminated in any way against any Plaintiffs, as individuals or a group. Instead, Plaintiffs claim only that

36

"Defendants have maintained a public school system without establishing standards sufficient to deliver access to literacy to Plaintiffs." (Dkt. 1, Compl. ¶ 212, Pg. ID 129.) The Complaint alleges unfortunate conditions in the children's schools, but they do not provide any relationship between the conditions of the schools and any race discrimination by Defendants. The Complaint does not even describe, much less define, the "known violations" of discrimination law that the State ignored or otherwise refused to "remedy," much less that it did so "on the basis of race, color, or national origin [.]" (Dkt. 1, Compl. ¶ 212, Pg. ID 130.)

Instead, the Complaint claims that the State failed to set standards, but it does not allege that the standards set by the State were any different for the schoolchildren in Detroit than they were for schoolchildren in any other part of the State. Most importantly, the Complaint does not allege that any standard applied to Detroit schoolchildren was applied to one race, color, or a child of a particular national origin, but not to another.

Title VI prohibits intentional discrimination on the basis of race, color, or national origin in programs and activities receiving Federal financial assistance. 42 U.S.C. § 2000d. Title VI "prohibits only intentional discrimination" and not disparate impact. *Alexander*, 532 U.S. at 280-281, citing *Alexander v. Choate*, 469 U.S. 287, 293 (1985). The elements of a case of intentional discrimination are "membership in a protected class, meeting the school's legitimate educational

37

expectations, an adverse educational action and worse treatment than that of similarly situated students not in the protected class." *Hotchkiss v. Garno*, 883 F. Supp. 2d 719, 737 (E.D. Mich. 2012) (internal citations omitted).

Plaintiffs fail to allege, even in conclusory terms, any racially discriminatory intent by the Defendants. Even a claim of deliberate indifference must be founded on actual knowledge of the discriminatory acts. "Constructive knowledge is not enough; only actual knowledge is a predicate to liability." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 666 (2d Cir. 2012). Here, Plaintiffs do not allege any actual knowledge, or even any intentionally discriminatory acts—and such an allegation would be difficult, indeed, when all the State's actions applied equally to all Detroit's similarly situated schoolchildren. Instead, Plaintiffs only allege "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678.

Moreover, even if Plaintiffs had made out a claim of deliberate indifference, under Title VI "victims do not have a right to specific remedial measures." *Zeno*, 702 F.3d at 666 (citing *Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)). Thus, Plaintiffs' claims would not warrant this Court taking jurisdiction to impose a particular literacy program. Such action would fail

38

to "accord sufficient deference to the decisions" of a school's elected policy makers. *Zeno*, 702 F.3d at 666 (citing *Davis*, 526 U.S. at 648).

Because Plaintiffs fail to state any claim of intentional discrimination, or any allegations regarding the allegedly "known" violations, their Title VI claim fails. *Darwich*, 2011 U.S. Dist. LEXIS 49724, at *7. And, because there is no private right of action under Title VI that could be premised on the disparate impact theory ostensibly presented here, there is no justification for finding that the Defendants have waived their Eleventh Amendment immunity for those claims. *Alexander,* 532 U.S. at 293.

More importantly, because Plaintiffs bring this action on behalf of all public-school students in the named Detroit schools, they cannot demonstrate that the State, or even the emergency managers for the school district, took an adverse educational action and treated members of a protected class worse than similarly situated Detroit students outside the protected class. *Hotchkiss*, 883 F. Supp. 2d at 737. Plaintiffs' Title VI claims should therefore be dismissed.

## CONCLUSION AND RELIEF REQUESTED

Plaintiffs' claims fail as a matter of law because they lack any firm legal footing. Plaintiffs have not demonstrated any constitutional right to literacy, much less that the law provides them with any legal recourse against the State in this Court. Without a legally valid right or an illegal interference with that right,

39

Plaintiffs' claims fail as a matter of law. This Court does not have jurisdiction to entertain Plaintiffs' claims against the Defendants because Plaintiffs lack standing and the claims are barred by the Eleventh Amendment and *Rooker-Feldman* doctrine. Alternatively, should the Court determine it does have jurisdiction, the claims otherwise fail on the legal merits.

WHEREFORE, the Defendants respectfully requests the Court grant this motion and dismiss all claims against them.

Respectfully submitted,

Bill Schuette
Attorney General


/s/ Timothy J. Haynes
Timothy J. Haynes
Joshua S. Smith
Katherine J. Bennett
Assistant Attorneys General
Attorneys for State Defendants
Health, Education & Family Services
P.O. Box 30758
Lansing, MI 48909
(517)373-3300
haynest3@michigan.gov
Smithj46@michigan.gov
BennettK1@michigan.gov
P41196
P63349
Dated: November 17, 2016          P75913

40

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2016, I electronically filed the above

document(s) with the Clerk of the Court using the ECF System, which will provide

electronic copies to counsel of record.

/s/ Timothy J. Haynes
Assistant Attorney General
Attorney for State Defendants
Health, Education & Family Services
P.O. Box 30758
HaynesT3@michigan.gov
P41196

41