# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| GARY B.; JESSIE K., a minor, by Yvette K., guardian ad litem; CRISTOPHER R. and ISAIAS R., minors, by Escarle R., guardian ad litem; ESMERALDA V., a minor, by Laura V., guardian ad litem; PAUL M.; JAIME R., a minor, by Karen R., guardian ad litem, on behalf of themselves and all others similarly situated, | CLASS ACTION<br><br>Civil Action No.: 16-CV-13292<br><br>Hon. Stephen J. Murphy, III<br><br>Mag. Anthony P. Patti |
| Plaintiffs,<br>v.<br><br>RICHARD D. SNYDER, in his official capacity as Governor of the State of Michigan; JOHN C. AUSTIN, MICHELLE FECTEAU, LUPE RAMOS-MONTIGNY, PAMELA PUGH; KATHLEEN N. STRAUS, CASANDRA E. ULBRICH, EILEEN WEISER, and RICHARD ZEILE, in their official capacities as members of the Michigan Board of Education; BRIAN J. WHISTON, in his official capacity as Superintendent of Public Instruction for the State of Michigan; DAVID B. BEHEN, in his official capacity as Director of the Michigan Department of Technology, Management, and Budget; and NATASHA BAKER, in her official capacity as the State School Reform/Redesign Officer,<br><br>Defendants.<br>_____ | *AMICUS CURIAE* BRIEF OF THE AMERICAN FEDERATION OF TEACHERS, AFL-CIO IN SUPPORT OF PLAINTIFFS' COMPLAINT |

# TABLE OF CONTENTS

| | |
|---|---|
| TABLE OF CONTENTS | i |
| INTRODUCTION | 1 |
| ARGUMENT | 1 |
| I.   The State Prevents Teachers from Providing Their Students Access to Literacy. | 1 |
| II.  The State Has Direct Authority over the Contracts that Govern the Terms and Conditions of Employment for Educators in Plaintiffs' Schools. | 8 |
| CONCLUSION | 11 |

## INTRODUCTION

America's classroom teachers work every day to the best of their ability to help their students become literate members of our society. Literacy is fundamental to citizenship and is an essential condition precedent for children to develop skills and knowledge needed for college, career and for life. The State of Michigan, which has responsibility for funding, and which for more than eight years had direct managerial authority through the emergency management system over Detroit's schools has been woefully negligent in its responsibility to its youngest citizens who attend both public and charter schools in the City of Detroit. Simply put, the State failed to deliver instruction and tools essential for access to literacy. The American Federation of Teachers, AFL-CIO (hereinafter, AFT) and its members throughout the United States stands in full support of the goals sought and arguments made by Plaintiffs in this lawsuit. For the Court's benefit in adjudicating the various claims brought by Plaintiffs, the AFT presents the following information and arguments in support of Plaintiffs' claims.

## ARGUMENT

**I.      The State Prevents Teachers from Providing Their Students Access to Literacy.**

Teachers agree with the Plaintiffs in this case that literacy is key to

1

surviving and thriving as an American citizen in the 21st Century.[1] In their motion to dismiss, Defendants have accused Plaintiffs of having "rather lofty expectations" for children in the City of Detroit. *See* Motion to Dismiss at 29. Nothing could be further from the truth. What teachers seek for their students in Detroit should be nothing less than what we expect for all American children. The expectations and goals for basic literacy should not be attainable only in places like Grosse Pointe, Mich.; Scarsdale, N.Y.; Montgomery County, Md.; or Newton, Mass. Rather, they are goals and expectations for students to be literate at a basic level anywhere in our country. The chasm between these goals and the reality in the Detroit schools today is vast.

While the State of Michigan, arguably, sets standards that would require pupils to access literacy, the state has failed to provide the conditions needed for the Detroit schools, which have been under state control, to meet those standards. Indeed the conditions further deteriorated under state control, thus preventing those standards from being attained.[2] Furthermore, the state's "education reform" model for Detroit of promoting public school academies (known commonly as charter schools), which are virtually unaccountable to the state or the public, to

---

[1] The AFT represents the teachers and other personnel in the Detroit schools. While AFT does represent some educators in Detroit charter schools, it does not represent employees in the charter schools attended by the plaintiffs in this case.
[2] The Detroit schools have been under the control of a state-appointed emergency financial manager since December 2008. Doc. 1: *Plaintiffs' Complaint* at 69.

educate significant numbers of pupils has failed to cure the problem of educational outcomes in the city. Indeed, by syphoning off resources from the other Detroit schools, it simply made things worse for virtually all of Detroit's children. The performance data for students on the state's own Michigan Student Test of Educational Progress (hereinafter, "M-STEP") demonstrate the validity of these assertions. As discussed more fully in Plaintiffs' Complaint, despite remarkable efforts by educators in the Detroit public schools who are working in an environment where the needs of their students have been callously ignored by the state,"students in Plaintiffs' schools have disproportionately failed to meet the proficiency standards established by the state" in the language arts. Doc. 1: *Plaintiffs' Complaint* at 91.[3] Plaintiffs' schools are among the lowest performing in the state's own "Top-to-Bottom" list of school rankings. *Id.* at 93-94. We identify and focus below on three areas of significant concern to classroom teachers which represent ways in which the state prevents teachers from providing their students access to literacy: the failure to establish an evidence-based, systemic approach to literacy instruction, particularly at the elementary level; the failure to make the necessary commitments to increase teacher capacity and stability and the failure to meaningfully address the deplorable condition of the physical plant in the Detroit school system.

---

[3] References to Plaintiffs' Complaint refer to paragraph numbers throughout.

   A. The State Fails to Provide the Materials and Programs Necessary to Provide Access to Early Literacy.

Elementary school students do not have the conditions, materials, or environment in the Detroit Public Schools that would enable them to walk the path to functional literacy. The National Institute for Literacy has identified a set of "conventional literacy skills" such as, "decoding, oral reading fluency, reading comprehension, writing, and spelling. Timothy Shanahan, *Developing Early Literacy: Report of the National Early Literacy Panel*, National Institute for Literacy vii (2008) *available at* [https://lincs.ed.gov/publications/pdf/NELPReport09.pdf](https://lincs.ed.gov/publications/pdf/NELPReport09.pdf). The institute stated that, "the use of these skills is evident within all literacy practices, and they are readily recognizable as being necessary or useful components of literacy." *Id.* Students in Detroit fall short of this standard for literacy. It is a fact that significant numbers of students in the Detroit schools cannot read, write, or comprehend at grade level. Doc. 1: *Plaintiffs' Complaint at 5*. The M-STEP test scores and the state's school rankings make that plain. Plaintiffs provide a moving example in the Complaint, of why: third-grade students at the Hamilton school had access to nothing but picture books until a teacher, at her own expense, purchased others. *See id. at 6.* Without access to grade-level appropriate books, students at the third-grade level cannot expect to attain the standards set by the National Institute for Literacy. The fact that second and third-graders are still working on handwriting

4

and sounding out letters of the alphabet places them well below where they need to be. *See id.* From the perspective of classroom teachers, the lack of textbooks and instructional materials, lack of basic classroom resources, overcrowding in the classrooms that means that students with particular learning needs cannot get the individualized attention they need, and unsanitary and dangerous conditions in the classrooms exacerbate the challenges that language arts teachers face every day. *Id.* at 10-13. This is especially true since, as the National Institute for Literacy states, "Conventional reading and writing skills that are developed in the years from birth to age 5 have a clear and consistently strong relationship with later conventional literacy skills." Shanahan at vii. A number of the students who enter the Detroit public schools and who come from low-income families do not start with the same level of basic literacy skills as identified by the National Institute for Literacy.[4] Consequently, it is important to provide them additional support using recognized learning programs early on so that they can catch up. Despite the recognized need for such assistance for kindergartners entering the Detroit public schools, the state of Michigan does not require children to attend kindergarten and has turned a

---

[4] 73% of the K-12 students in the Detroit public schools are eligible for the Free and Reduced-Price lunch program, based on Fall 2015 data. Center for Educational Performance and Information (CEPI), Michigan School Data (data sourced from Fall 2015 Michigan Student Data System (MSDS)). *"Free and Reduced-Price Lunch Counts - Fall 2015 District-Level Data: K-12"* available at https://www.mischooldata.org/Other/DataFiles/StudentCounts/HistoricalFreeAndReducedLunchCounts.aspx.

blind eye to their literacy needs.

The AFT in its role as *amicus curiae* desires to make this Court aware of a recent decision by the Detroit Public Schools Community District that will have an adverse effect on the access to literacy by Detroit pupils and exacerbate the poor learning conditions outlined in Plaintiffs' Complaint. The Detroit Public Schools Community District terminated a program called Reading Recovery during the week of December 4, 2016. Ann Zaniewski, Detroit Public Schools: Teacher Shortage Ends Literacy Program, Detroit Free Press, Dec. 15, 2016 available at: http://www.freep.com/story/news/education/2016/12/15/detroit-schools-reading-recovery/95167014/. As noted in the Detroit Free Press, this decision left approximately "100 first-graders who are having trouble learning how to read and write without daily one-on-one help from reading specialists." *Id*. As noted by several teachers in the article, this change will only serve to have a negative effect on pupil literacy in Detroit. *See id*. Due to the fact that this program was cut so recently, we do not yet know what its impact will be on student test scores and other measures of educational outcomes in Detroit but it can only serve to make matters worse.

      B.    The State Fails to Provide Teachers the "Tools, Time, and Trust" To Enable Access to Literacy.

Plaintiffs' Complaint states unequivocally, "In order to effectively implement literacy instruction and intervention programs, teaching staffs must be

6

supported, well-trained, and highly qualified." Doc. 1: *Plaintiffs' Complaint* at 188. AFT President Randi Weingarten refers to this as the "tools, time, and trust" that allow teachers to accomplish their professional responsibilities. Randi Weingarten, *A New Path Forward: Four Approaches to Quality Teaching and Better Schools*, *available at:*

http://www.aft.org/sites/default/files/wysiwyg/sp_weingarten011210.pdf. We support Plaintiffs' assertions that the State must take several important actions to increase the capacity and stability of the teaching force in the Detroit schools. The state must implement practices to promote learning readiness. *Id.* at 189. Such practices include, but are not limited to: high quality professional development for educators, programs to address trauma among educators and their pupils which if left unaddressed will impede learning, and creating financial and other incentives to teach in low performing schools.

    C.    The State Fails to Provide the Material School Conditions Necessary to Enable Access to Literacy.

An experienced classroom teacher knows that it is difficult to educate pupils when the walls are falling down around the students. A decent physical plant is among the "basic, commonsense conditions" referred to by Plaintiffs in their Complaint, which "must be in place to ensure that all children have the opportunity to access literacy." Doc. 1: *Plaintiffs' Complaint* at 4. For this reason, the AFT is the plaintiff in a case pending before this Court that addresses the conditions of

7

buildings in the Detroit school system. *See American Federation of Teachers v. Detroit Public Schools,* Case. No. 2:16-cv-10400-DML-RSW (E.D. Mich. filed Feb. 4, 2016). Several of the most egregious problems with the Detroit public school buildings include: black mold, bacteria, freezing temperatures in the winter and classrooms that are unsafe because they are too hot in the summer, rodent and insect infestations, exposed wiring, tripping and falling hazards, and falling debris. *AFT Complaint* at 35. Many of these issues are addressed by Plaintiffs in the instant case in their complaint. Doc.1: *Plaintiffs' Complaint* at 119. To classroom teachers, the connection between student learning and safe physical conditions in the schools is fundamental. No student should be expected to attend a public school that is unsafe or where the building conditions are so dilapidated and neglected that effective learning cannot take place.

## II. The State Has Direct Authority over the Contracts that Govern the Terms and Conditions of Employment for Educators in Plaintiffs' Schools.

The State of Michigan remains responsible for major decisions that affect the school district's ability to deliver literacy instruction to pupils. Throughout the brief in support of their motion to dismiss, Defendants go to great lengths to distance the State of Michigan from "local control" by the school district. Doc. 60:

8

Defendants' Brief at 4-11.[5] In fact, the state's Financial Review Commission (hereinafter, FRC) retains significant involvement in the oversight of the Detroit schools. *See* Doc. 1: *Plaintiffs' Complaint* at 69.[6]

The FRC is a creature of state law. *See* Mich. Comp. Laws § 141.1632(a). It presently consists of two state department heads plus three (other) appointees of the governor and two other state appointees out of eleven total commissioners. *See* Mich. Comp. Laws § 141.1635; http://www.michigan.gov/treasury/0,4679,7-121-1751_51556_77310-389667--,00.html. The FRC:

- approves or disapproves collective bargaining agreements; Mich. Comp. Laws §141.1636(9);
- approves or disapproves "applicable contracts"; Mich. Comp. Laws §141.1636(6);
- approves the appointment or the termination of the school district's chief financial officer; Mich. Comp. Laws §141.1637(h); and
- approves the termination, if any, of the school district's superintendent. Mich. Comp. Laws § 141.1637(i).

As such, to suggest that "[t]he State of Michigan does not operate or control public schools in the City of Detroit" (Doc. 60 : Defendants' Brief at 5) is inconsistent with the legal and factual control maintained and exercised by the state. Indeed, the AFT is appreciative that the FRC approved the three collective bargaining agreements between the school district and the AFT-affiliates (Detroit Federation

---

[5] References to the Defendants' Brief in support of their motion to dismiss are to page numbers.
[6] References to Plaintiffs' Complaint are to paragraph numbers.

of Teachers, Detroit Federation of Paraprofessionals, and Detroit Association of Educational Office Employees) in September 2016.  See, e.g., http://www.michigan.gov/documents/treasury/DETROIT_FRC_SD_Resolution_2016_14_534931_7.pdf and http://www.michigan.gov/documents/treasury/Detroit_FRC_SD_Resolution_2016_20_540131_7.pdf. The salient point is this: such approval normally comes solely from *boards of education* in the other school districts in Michigan; only in Detroit's school district does final approval of labor agreements come from *both* the board of education *and* the FRC.[7]

In short, the state retains financial control through the FRC, oversees the labor policy for the school district and has approval power over the highest leadership of the district, who are individuals that are charged with implementing the school board's financial and educational goals.  The defendants' neglect of the FRC in its brief is a striking, and fatal, omission.

---

[7] The FRC has been involved in specific employee benefits:  the FRC reviewed and approved the payment of lump-sum money to employees who "opted out" of the school district's medical insurance program. *See*, http://www.michigan.gov/documents/treasury/Detroit_FRC_SD_Resolution_2016_21_540135_7.pdf
Major non-labor contracts are also approved by the FRC.  *See, e.g.*, http://www.michigan.gov/documents/treasury/Detroit_FRC_SD_Resolution_2016_18_Contracts_540129_7.pdf

## CONCLUSION

For the foregoing reasons, the AFT supports Plaintiffs' Complaint and respectfully requests that this Court issue relief sought by the Plaintiffs on all claims.

        Respectfully Submitted,

        SACHS WALDMAN, P.C.

        By:   */s/ Marshall J. Widick*
                MARSHALL J. WIDICK (P53942)

        2211 E. Jefferson Ave., Suite 200
        Detroit, MI 48207
        (313) 965-3464
        mwidick@sachswaldman.com

        David J. Strom
        Samuel J. Lieberman
        American Federation of Teachers, AFL-CIO
        555 New Jersey Avenue NW
        Washington, DC 20001
        (202) 393-7472
        dstrom@aft.org
Dated: January 31, 2017        sam.lieberman@aft.org

## CERTIFICATE OF SERVICE

Marshall J. Widick, first being duly sworn, deposes and says that on January 31, 2017, he did electronically file aforesaid motion, brief, and any exhibits, with the Court Clerk via the ECF system, which will provide notice and service of such documents upon the parties through counsel of record.

*/s/ Marshall J. Widick*
MARSHALL J. WIDICK (P53942)