

1     UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF MICHIGAN
2      SOUTHERN DIVISION

3

4 GARY B.; JESSIE K., a minor, by
  Yvette K., guardian ad litem;
5 CRISTOPHER R. and ISAIAS R.,
  minors, by Escarle R., guardian
6 ad litem; ESMERALDA V., a
  minor, by Laura V., guardian ad
7 litem; PAUL M.; JAIME R., a
  minor, by Karen R., guardian ad
8 litem, on behalf of themselves
  and all others similarly
9 situated,

10     Plaintiffs,
  v.         Case No. 16-13292
11          Hon. Stephen J. Murphy, III
  RICHARD D. SNYDER, in his
12 official capacity as Governor
  of the State of Michigan; JOHN
13 C. AUSTIN, MICHELLE FECTEAU,
  LUPE RAMOS-MONTIGNY, PAMELA
14 PUGH; KATHLEEN N. STRAUS,
  CASANDRA E. ULBRICH, EILEEN
15 WEISER, and RICHARD ZEILE, in
  their official capacities as
16 members of the Michigan Board
  of Education; BRIAN J. WHISTON,
17 in his official capacity as
  Superintendent of Public
18 Instruction for the State of
  Michigan; DAVID B. BEHEN, in
19 his official capacity as
  Director of the Michigan
20 Department of Technology,
  Management and Budget; and
21 NATASHA BAKER, in her official
  capacity as the State School
22 Reform/Redesign Officer,

23     Defendants.
  _____/
24

25

Case 2:16-cv-13292-SJM-APP ECF No. 109 filed 08/18/17 PageID.2550 Page 2 of 50
Motion to Dismiss • Thursday, August 10, 2017

2

```
1                      MOTION TO DISMISS

2            BEFORE THE HONORABLE STEPHEN J. MURPHY, III
                    United States District Judge
3             Theodore Levin United States Courthouse
                    231 West Lafayette Boulevard
4                    Detroit, Michigan  48226
                    Thursday, August 10, 2017
5
     APPEARANCES:
6
     For the Plaintiff        MARK DALE ROSENBAUM
7    Gary B., et al:          Public Counsel
                              610 South Ardmore Avenue
8                             Los Angeles, California  90005
                              213-385-2977
9
                              TACY F. FLINT
10                            Sidley Austin LLP
                              One South Dearborn
11                            Chicago, Illinois  60603

12                            EVAN CAMINKER
                              Dean Emeritus
13                            Branch Rickey Collegiate
                              Professor of Law
14                            University of Michigan Law School
                              3250 South Hall
15                            Ann Arbor, Michigan  48109

16   For the Defendant        TIMOTHY J. HAYNES
     Richard D. Snyder, et al: KATHERINE J. BENNETT
17                            JOSHUA S. SMITH
                              Michigan Department of Attorney
18                            General
                              525 Ottawa Street
19                            Box 30758
                              Lansing, Michigan  48933
20                            517-373-7700

21

22

23        To obtain a certified copy of this transcript, contact:
               Linda M. Cavanagh, CSR-0131, CRR, RMR, RDR
24                     Official Court Reporter
                 (313) 234-2616 • www.transcriptorders.com
25
```

1                        TABLE OF CONTENTS

2                                                        Page

3      MOTION TO DISMISS:

4      Motion by Mr. Haynes                               5
       Response by Mr. Rosenbaum                         19
5      Reply by Mr. Haynes                               45
       Further Response by Mr. Rosenbaum                 48
6      Taken Under Advisement by the Court               49

7

8

9

10

11

12

13

14

15

16

17                           EXHIBITS

18     Identification                    Offered   Received

19     NONE

20

21

22

23

24

25

Case 2:16-cv-13292-SJM-APP   ECF No. 109   filed 08/18/17   PageID.2552   Page 4 of 50
Motion to Dismiss • Thursday, August 10, 2017

4

```
 1              Detroit, Michigan
 2              Thursday, August 10, 2017
 3                        —  —  —
 4              (Proceedings commenced at 2:02 p.m., all parties
 5              present)
 6              THE CLERK:  The Court calls Case No. 16-13292, B., et
 7    al versus Snyder, et al.
 8              Counsel, please state your names for the record.
 9              MR. ROSENBAUM:  Good afternoon, Your Honor.  Mark
10    Rosenbaum on behalf of the plaintiffs.
11              THE COURT:  Afternoon.
12              MS. FLINT: Your Honor, Tacy Flint on behalf of the
13    plaintiffs.
14              THE COURT:  Welcome.
15              MR. CAMINKER:  Your Honor, Evan Caminker on behalf of
16    the plaintiffs.
17              THE COURT:  Welcome to you as well.  Okay.
18              MR. HAYNES:  Good afternoon, Your Honor.  Assistant
19    Attorney General Timothy Haynes on behalf of the state official
20    defendants.
21              THE COURT:  Welcome to you.  Who do you have sitting
22    up front with you there?
23              MR. HAYNES:  I also have Assistant Attorneys General
24    Katherine Bennett and Joshua Smith present today.
25              THE COURT:  Okay.  Very good.  Welcome to everyone.
```

1   Thank you very much for being on time.  Thank you very much for

2   the hard work on the case.

3        The schools that the students attend are -- are

4   deplorable.  The buildings are infested with vermin.  The

5   hallways are filthy.  The rooms are freezing in the winter,

6   sweltering in the summer.  Books are sparse or non-existent,

7   teachers are few, changing and uncredentialed.  The results of

8   the schools are dismal.  Reading proficiency rates for the

9   schools is zero.  The schools appear to be much worse than most

10  other Michigan school districts.  And the plaintiffs have filed

11  suit and said the State of Michigan is to blame.

12        Taking the plaintiffs' allegations in the light most

13  favorable to them, they say that the plaintiffs -- and by the

14  way, I don't think the State of Michigan disagrees with what I

15  just said about the schools in the City of Detroit.  The state

16  has controlled Detroit schools since 1999.  The plaintiffs say

17  that the state officials are responsible for the students'

18  plight and are the appropriate parties to enjoin going forward.

19        The state has lodged a lengthy 60-plus-page brief in

20  support of a motion to dismiss the claims, and we have

21  scheduled today's date and time for hearing and I'm pleased to

22  discuss the issues with the lawyers and see if we can't resolve

23  the motion.

24        So you want to start, Mr. Haynes?

25        MR. HAYNES:  Thank you, Your Honor.

6

```
1          There is one point that I would take issue with and I
2    think that we've addressed in our brief --
3          THE COURT:  Uh-huh.
4          MR. HAYNES:  -- as to a statement that you just made,
5    Your Honor.  We -- we do not concede that the state has
6    controlled the schools in the City of Detroit since 1999, and
7    we've set out the legal inaccuracies of the plaintiffs'
8    assertions to that effect in our brief and in our response.
9          THE COURT:  Well, I should deny your motion and send
10   the case forward to discover who controls the schools and
11   whether they or you should be enjoined then, right?
12         MR. HAYNES:  No, Your Honor, because those are simply
13   inaccurate legal conclusions contained in the Complaint.
14         THE COURT:  In light of Iqbal and Twombley, I should
15   simply overlook them and address your motion on the merits.
16         MR. HAYNES:  Correct.
17         THE COURT:  Okay.  Go ahead.
18         MR. HAYNES:  Thank you, Your Honor.
19         The overarching issue in this case is whether there's
20   a substantive right to literacy under the Constitution.  The
21   Complaint and the plaintiffs claim that literacy or access to
22   literacy as they prefer to refer to it is a fundamental right,
23   a constitutionally protected interest under the 14th Amendment,
24   but the text of the 14th Amendment contains no reference to
25   literacy or access to literacy.
```

7

```
1              More importantly, while acknowledging the
2     significance of literacy in society, United States Supreme
3     Court has consistently and unwaveringly held that education is
4     not a fundamental right or liberty interest under the 14th
5     Amendment.  The Brown case, San Antonio vs. Rodriguez and
6     Plyler vs. Doe all reject claims that education is a
7     substantive right under the 14th Amendment despite
8     acknowledging the importance of literacy.
9              THE COURT:  Plyler was -- did Plyler involve the
10    aliens?
11             MR. HAYNES:  Correct.
12             THE COURT:  Yes.  Illegal aliens had no right to
13    education, and there was clearly no education being given in
14    that case because the state prohibited children of illegal
15    aliens from attending schools.  Do I have that right?
16             MR. HAYNES:  Correct.  There was a specific state
17    enactment, a state statute that -- that prohibited or
18    eliminated a distinct class of students that were children of
19    immigrant -- or illegal immigrants from attending the Texas
20    school system.
21             THE COURT:  Right.  I don't quite understand how
22    that's analogous here because obviously we have students who
23    are in -- in school.  Now, I understand -- and we'll talk to
24    the plaintiffs about what type of education the children get,
25    if any, and I think their point is that they don't, but -- but
```

Motion to Dismiss • Thursday, August 10, 2017

1     how is *Plyler* supportive of the proposition that -- that we

2     should dismiss this case if there are those factual

3     distinctions that I just drew up?

4           MR. HAYNES: Your Honor, the plaintiffs are -- have

5     argued that *Plyler* is the controlling authority here, and as --

6     as you've already noted, we believe that *Plyler* actually is a

7     case that would require dismissal. *Plyler* said there was no

8     substantive due process right to education, literacy is a

9     bi-product of the education system, and it involved a specific

10     state enactment, a specific state statute that affected a

11     discrete group of people.

12           THE COURT: Okay.

13           MR. HAYNES: Here we don't have that. The plaintiffs

14     don't direct us or the Court to any specific state enactment

15     that eliminates or excludes a discrete segment of the

16     population of students from attending the schools of the state.

17     Instead --

18           THE COURT: Okay. Maybe I asked my question the

19     wrong way. If I were to determine as a matter of law or fact

20     that the allegations in the -- in the Complaint of the

21     plaintiffs constitute a education of some sort, then you -- you

22     would take the position that *Rodriguez* certainly and *Plyler*

23     even more so would -- would mandate dismissal of the case

24     because there's no fundamental right that those two cases --

25     that those two cases said there's no fundamental right. You're

1    giving education.  It may not be -- your schools are giving

2    education.  It may not be great, but it gets you over the

3    threshold of -- of saying that there -- there is something

4    that's being given.  What's being given is never anything that

5    the Supreme Court has recognized as -- as actionable, and

6    therefore as a matter of law, the case has to be dismissed.  Is

7    that...

8            MR. HAYNES:  Correct.

9            THE COURT:  All right.  Okay.  Well, let me ask you

10   then about this opinion that Justice White wrote, *Popasan*

11   [sic], *Papasan*, I'm not sure of the exact pronunciation.

12   Certainly the Court alluded to and seemed to reinforce that

13   a -- an education is not a fundamental right, but it seems

14   Justice White on behalf of the Court left the door open for the

15   plaintiffs' claims here.  Where, quote, "a system fails to

16   provide each child an opportunity to -- provide each child with

17   an opportunity to acquire basic minimal skills necessary for

18   the enjoyments of rights of speech and full participation in

19   the political process," there's an opportunity it seems to me

20   for an equal protection claim.

21            In other words, it doesn't seem settled that -- and I

22   have a -- a better quote here that suggests that the denial of

23   an educational opportunity could be the type of right that

24   might be actionable under that case.  Education is not a

25   fundamental right, but the Court has, quote, "not yet

Case 2:16-cv-13292-SJM-APP   ECF No. 109   filed 08/18/17   PageID.2558   Page 10 of 50
Motion to Dismiss • Thursday, August 10, 2017

10

```
1    definitively settled the questions whether a minimally adequate
2    education is a fundamental right and whether a statute alleged
3    to discriminatorily infringe that right should be accorded
4    heightened equal protection review."
5            What that seems to me -- what that seems to say to me
6    is that if, as a matter of fact or law, minimally adequate
7    education is a fund -- could be a fundamentally -- fundamental
8    right, and if your scheme discriminate -- discriminatorily
9    infringes it, I should give heightened equal protection review
10   to it.  But we probably can't get to that point until we
11   determine whether what the City of Detroit schools are doing is
12   minimally -- minimally -- I'm sorry, you go ahead and -- and --
13   and answer.  I know I've been speaking -- minimally adequate or
14   not.  Go right ahead, Mr. Haynes.
15           MR. HAYNES:  Thank you, Your Honor.
16           Well, as -- as you've said, that's -- that's language
17   that's pulled out of one either concurring and -- opinion; it
18   was not part of the decision as a whole.  When you look at all
19   these cases that have dealt in the educational context, while
20   some of the justices may have discussed this possibility,
21   there's been no federal case, no Supreme Court case, no circuit
22   has held that there is a right to a minimally adequate
23   education.  So this Court would be called on to be the first --
24           THE COURT:  Right.
25           MR. HAYNES:  -- to ever make that conclusion.  And
```

1   frankly, that's language that's found nowhere in the

2   Constitution.

3           THE COURT:  That's pretty unappetizing for me to

4   consider doing something that's never been done before laid out

5   in the Constitution, right?  So...

6           MR. HAYNES:  The second thing I note is in *Papasan*

7   again, like in the *Plyler* case, the Court was reviewing a

8   specific state statute.

9           THE COURT:  Yes.

10          MR. HAYNES:  And those state statutes provided less

11  funding for some schools based on geographic location.  Again,

12  something that's not present here --

13          THE COURT:  Yes.

14          MR. HAYNES:  -- is an allegation that a specific

15  statute is at issue.

16          THE COURT:  The plaintiffs will want to talk about

17  that I'm sure.  We have to determine what exactly they're

18  challenging, but I had not determined or detected that they're

19  challenging any specific statute or regulation.  I -- I -- I

20  agree with you on that.

21          Go right ahead.

22          MR. HAYNES:  The laws defining Michigan's state

23  school system do not contain any provision that authorizes or

24  directs the exclusion of students in plaintiffs' schools from

25  accessing schools that offer an opportunity to attain literacy,

Motion to Dismiss • Thursday, August 10, 2017

1    for teachers, for books and instruction materials, or safe

2    conditions.

3          I think as we've demonstrated in our briefs,

4    plaintiffs' false legal assertions that the state controls

5    education at these five schools and is therefore somehow

6    responsible for the deprivation of education that these

7    children are experiencing is legally inaccurate.  Again --

8          THE COURT:  Who do you suggest they sue if not the

9    state?

10         MR. HAYNES:  Those that actually deprived these

11   individuals of teachers; those that failed to maintain

12   conditions of these buildings; those that are directly

13   responsible for those conditions.  In -- in some instances, the

14   children attempted charter schools, public school academies.

15   Those are entities that are operated by charter school boards,

16   they are authorized by either universities, community colleges

17   or sometimes even school districts or intermediate school

18   districts.  They are governed by that board, not by these state

19   officials.  The -- the authorizer is the one that is required

20   to ensure that those schools comply with all state and federal

21   laws, not the state officials.

22         THE COURT:  All right.

23         MR. HAYNES:  As demonstrated by another case that was

24   in front of this district that involved a settlement or related

25   to the conditions of the school buildings, the *AFT vs. Detroit*

1    *Public School Community District* case.

2            THE COURT:  Was that Judge Lawson's case?

3            MR. HAYNES:  I don't recall if it was Judge Lawson

4    but it was in this district.

5            THE COURT:  All right.

6            MR. HAYNES:  Again, that demonstrates that -- that

7    the district is responsible for maintaining those schools.

8            THE COURT:  Yeah.

9            MR. HAYNES:  The consent agreement that we attached

10   to our briefs shows that the City of Detroit is responsible for

11   inspection of those buildings, so the governor isn't the one

12   that maintains buildings.  You know, our system is set up to be

13   decentralized.  We have local school districts which are

14   political subdivisions, independent entities for purposes of

15   constitutional violations, discrimination, harassment, all

16   those types of claims.  The state doesn't become responsible by

17   some respondeat superiore theory.

18           THE COURT:  All right.  What else do you want to say?

19   So you're -- you're -- would it be fair to conclude from what

20   we've discussed so far that your primary argument is that you

21   have an *Iqbal/Twombley* position or defense on the wording of

22   the Complaint, that the -- the -- the allegations are

23   implausible and can't be sustained because -- I mean I don't

24   see why that's not a matter of fact that we would have to have

25   discovery on if that's going to be your -- your -- your primary

1    argument.

2            MR. HAYNES:  Because those are all legal conclusions

3    contained within the Complaint, Your Honor.  Local school

4    districts by operation of the state laws that we've quoted in

5    our brief, and including the state decisions that have talked

6    about the state's role versus -- as setting up a system of

7    school, the *LM* case where Michigan courts have interpreted the

8    role of the state versus the role of local government in

9    providing education, all demonstrate that -- that local school

10   districts, separate political subdivisions of the state, are

11   the ones that deliver education in the State of Michigan, and

12   that's no different from Detroit.  And we have pointed out why

13   these allegations that the state has been in charge of Detroit

14   schools since 1999 are incorrect and inaccurate legally, not

15   factually, legally.

16           THE COURT:  Okay.  Say it again.  Go ahead.

17           MR. HAYNES:  The *Phillips* case, for instance, the --

18   part of the argument is that, well, the state appoints -- has

19   appointed an emergency manager over a series of years, but the

20   *Phillips* case out of the Sixth Circuit made clear that

21   emergency managers are local officials, that -- that there is

22   no right to elect local officials, and whether a state has an

23   appointive or an elective official doesn't change the nature of

24   that individual as a local official acting on behalf of that

25   locality.

Motion to Dismiss • Thursday, August 10, 2017

```
1              THE COURT:  All right.  Let me ask you a question.
2    Your arguments are persuasive, they're well thought out,
3    they're supported by analysis and reasoning, but what -- what
4    if I conclude as a matter of law that they're wrong and the
5    state does control the schools and the plaintiffs' allegations
6    are sustainable, if not -- plausible and perhaps sustainable,
7    where -- where do we go from there then?
8              MR. HAYNES:  I guess you're asking if -- if I -- if
9    you were to rule, not that I would concede --
10             THE COURT:  Right.
11             MR. HAYNES:  -- that the state is responsible for the
12   operation of these five discrete schools.
13             THE COURT:  Exactly.
14             MR. HAYNES:  Five in the whole state.
15             THE COURT:  Right.
16             MR. HAYNES:  That where does that leave this case?
17             THE COURT:  I mean, yeah.  Then we have --
18             MR. HAYNES:  I suppose at that point, then we get
19   into some issues of causation and other factual issues that
20   would have to be explored.  I don't know --
21             THE COURT:  Okay.
22             MR. HAYNES:  -- that that would entitle the
23   plaintiffs automatically to any type of judgment or relief at
24   this time.
25             THE COURT:  Well, no, I agree with that, but --
```

1     but -- but it seems to me that if the primary thrust of your

2     motion is to -- is to divorce the state from the management or

3     control of these five schools where these five children attend,

4     then we have to, A, do the constitutional and -- and -- and --

5     and -- and Supreme Court case analysis that I was looking

6     forward to and then see what we've got and -- and -- and get

7     some factual development to determine what -- whether my

8     initial consideration of the plausibility of the claims in the

9     Complaint are correct or not, right?

10            MR. HAYNES:  Again, I don't think from that

11     standpoint that there's a factual issue.  I think our -- and

12     maybe I'm misunderstanding, but, you know, part of our

13     jurisdictional arguments were that these actions aren't

14     traceable to these defendants.

15            THE COURT:  Right.

16            MR. HAYNES:  That over -- that -- that is sort of

17     overarching whether the denial by any -- by someone of rights

18     to these students based on these conditions would be --

19            THE COURT:  Well, I thought --

20            MR. HAYNES:  -- would be a viable claim.

21            THE COURT:  Right.  I thought that was --

22            MR. HAYNES:  And that might be a viable claim if --

23     if -- if the proper actors were before the Court but they're

24     not.

25            THE COURT:  Okay.  I thought those issues were well

1    briefed.  In terms of standing in particular, I didn't want to

2    take a great deal of time on that.  It -- it -- you know, we've

3    had a lot of development in the law and I've looked at a lot of

4    standing arguments over the course of the past few years, and

5    we all know that *Lujan* is to be read broadly to confer rights

6    on folks.  And I can -- I think I can kind of do the analysis

7    of injury in fact, a causal connection and redressability based

8    on the Complaint and -- and the arguments, but, you know, I'll

9    go back and take a better look at that in light of what you've

10   had to say here.

11          I would like to say that I have a lot of papers in

12   front of me here and I was paging through them.  The *Papasan*

13   language that I read to you was not from a concurrence, that

14   was Justice White writing for the Court, and I think it's

15   important and worth talking about again.  I mean I can't -- I

16   can't figure out whether or not the court has left open for

17   courts like this one the opportunity to definitively settle the

18   question of whether a minimally adequate education is a

19   fundamental right because at 285 to 286 of the *Papasan* opinion,

20   Justice White for the court says that the court has not yet

21   definitively settled those questions.  Does that in any way

22   change the analysis you made of what I ought to do under

23   *Papasan*?

24          MR. HAYNES:  Again, Your Honor, without an

25   established right, I don't know how this case moves forward.

1  The concept that courts, higher courts might some day address

2  this issue, they haven't yet, and despite multiple times where

3  these cases have been raised.  And most of these adequacy cases

4  therefore ended up in state courts and there's, you know, been

5  a whole series of state court actions under state constitutions

6  to determine whether minimally adequate education or some level

7  of minimum education is required by the state under their

8  constitutions.  In our case, our courts, Michigan courts have

9  said no.

10           THE COURT:  Okay.  All right.  What else would you

11  like to say here today?

12           MR. HAYNES:  You know, I think we've covered the main

13  things.  I guess I would take any other time for rebuttal.

14  Thank you.

15           THE COURT:  Okay.  Great.  We'll give you at least

16  ten minutes if you'd like that.  Thank you very much for your

17  argument and your dialogue with the Court.

18           Mr. Rosenbaum, right?

19           MR. ROSENBAUM:  Exactly right, Your Honor.

20           THE COURT:  From Los Angeles.

21           MR. ROSENBAUM:  Came for the good weather, Your

22  Honor.

23           THE COURT:  Well, it's nice to meet you.  You

24  recommended to me one of the nicest, best law clerks I ever

25  had, but we've never met so it's good to have you in the

Motion to Dismiss • Thursday, August 10, 2017

```
 1   courtroom.

 2           How would you like to open the discussion here?

 3           MR. ROSENBAUM:  Your Honor, I'd like to open by first

 4   thanking the Court.  The Court has had a large number of -- a

 5   large volume of papers before it.

 6           THE COURT:  Yeah.

 7           MR. ROSENBAUM:  And I know I'm talking on behalf of

 8   all counsel, we appreciate the sensitivity and the thoroughness

 9   with which the Court has reviewed those papers.

10           THE COURT:  Well, I appreciate you telling me that

11   and, you know, I appreciate the work of counsel, but it's --

12   it's unusual to get to read this many interesting Supreme Court

13   cases and I find the -- the issues quite fascinating.  So thank

14   you and go right ahead.

15           MR. ROSENBAUM:  Well, I'm eager to talk to the Court

16   about *Rodriguez* and *Plyler* and *Papasan*.

17           THE COURT:  Yes.

18           MR. ROSENBAUM:  But let me begin, Your Honor, by

19   framing the question because counsel has -- has discussed the

20   case not in keeping with the precise allegations of this

21   Complaint.

22           THE COURT:  Right.

23           MR. ROSENBAUM:  What's the question here?  The narrow

24   question before the Court this afternoon as to whether the

25   plaintiffs' Complaint states, as Your Honor puts it correctly,
```

Case 2:16-cv-13292-SJM-APP   ECF No. 109   filed 08/18/17   PageID.2568   Page 20 of 50
Motion to Dismiss • Thursday, August 10, 2017

20

1   a plausible claim for relief is this.  Where the State of

2   Michigan has undertaken to provide public education for all of

3   its students --

4           THE COURT:  Yes, because they mandate it, right?

5           MR. ROSENBAUM:  That is exactly right, Your Honor.

6           THE COURT:  Right, right.

7           MR. ROSENBAUM:  It is mandated both with respect to

8   two provisions of the California Constitution in Article VIII,

9   provision Sections 2 and 3.  And counsel is incorrect in terms

10  of statutes.  As we have cited in our brief, Section 380.1561

11  and 380.1599 specifically compels all students, all students,

12  including the plaintiffs in this case, to attend school.

13          THE COURT:  Right.

14          MR. ROSENBAUM:  There is no discretion here in terms

15  of where those students must be where there are liberty

16  interests for at least six hours a day.

17          And so in terms of whether or not the state is

18  fulfilling its constitutional obligation here, the question

19  is -- and I am quoting here, Your Honor, from *Rodriguez*.

20  *Rodriguez* talks about a system, a statewide system, page 37, a

21  statewide system which "fails to provide each child with an

22  opportunity to acquire the basic minimal skills necessary for

23  the enjoyment of the rights of free speech and of full

24  participation in the political process."

25          So the question here is whether or not the state

Case 2:16-cv-13292-SJM-APP  ECF No. 109  filed 08/18/17  PageID.2569  Page 21 of 50
Motion to Dismiss • Thursday, August 10, 2017

21

```
 1    fulfills its obligation where it compels students, in this case
 2    nearly all of whom are children of color --
 3            THE COURT:  Right.
 4            MR. ROSENBAUM:  -- to attend schools that are schools
 5    in name only.
 6            THE COURT:  Right.
 7            MR. ROSENBAUM:  Schools which are, as Your Honor
 8    characterized it at the beginning of our discussion this
 9    afternoon --
10            THE COURT:  Right.
11            MR. ROSENBAUM:  -- schools which are functionally
12    incapable, that's our allegations, functionally incapable of
13    affording these children the basic minimal skills essential to
14    a basic education, denying them, denying these innocent
15    children the opportunity to achieve access to literacy.
16            THE COURT:  Let -- let me -- let me say a couple of
17    things.  Here -- here's my -- and I -- I appreciate the
18    argument.  Here's my issue on Rodriguez.  Rodriguez dealt with
19    Texas giving unequal funding to different districts based on
20    property values.  The Court said, A, education is not a
21    fundamental right and therefore rational basis review applies,
22    and -- and -- and therefore there's a rational basis to the
23    scheme of funding in that case and -- and therefore they --
24    they affirmed the statutory scheme.
25            I don't think that's what's at issue here.  I think
```

1    what's at issue here and what I'm trying to figure out and it's

2    hard for me to do is that in light of what you said after you

3    cited the case, your position is that these kids are not

4    getting any education, right?

5          MR. ROSENBAUM:  Exactly right, Your Honor.  And

6    that Your -- Your -- Your Honor's citation to *Papasan* is right

7    on the button.

8          THE COURT:  Well, that's the thing that I -- I

9    mean --

10          MR. ROSENBAUM:  Because --

11          THE COURT:  -- they say in one paragraph education's

12   not a fundamental right and then they say, "We've never decided

13   whether a minimally adequate education is a fundamental right."

14   If you were to able to show they're not -- your clients are not

15   getting a minimally adequate education and that might be a

16   fundamental right, then I ought to rule that way and apply at

17   least intermediate scrutiny to the scheme that the state here

18   is carrying out, right?

19          MR. ROSENBAUM:  Well, I agree with the Court.

20          THE COURT:  All right.

21          MR. ROSENBAUM:  But let me make two points with

22   respect to this.

23          THE COURT:  Okay.

24          MR. ROSENBAUM:  First, Your Honor, Your Honor is

25   exactly correct about *Rodriguez*.  *Rodriguez* was a funding case.

Motion to Dismiss • Thursday, August 10, 2017

1   The argument was that the sort of disparities that the Court

2   just now characterized, that they -- it inflicted injury to

3   what the -- what was attempted there to make a fundamental

4   right of education.  That is not this case.  That is not what

5   we are seeking in this case.

6          At page 37 of the *Rodriguez* case, and this is quoted

7   in *Papasan*, it is quoted in *Kadrmas*, it is quote on the pages

8   of *Papasan* that Your Honor referred to, 286 and 287, it is also

9   talked about at page 284 by Justice White, and what the Court

10  said in *Rodriguez* is, look, no charge is being made here that

11  the children of Texas, indeed that any child in Texas was being

12  deprived by the system of education of the opportunity to

13  acquire the basic minimal skills necessary to exercise those

14  constitutional rights, and that is the part that Justice White

15  underlines.  When Justice White says, look, there is a funding

16  system here in Mississippi but no allegations are being made,

17  just as they were not made in Texas, that that in some way is

18  impairing the capacity of these children to get from the Texas

19  system basic minimal skills.

20         Indeed, if Your Honor looks not only at page 37 but

21  pages 45, 48, 49 and 50 of the *Rodriguez* decision, what the

22  Court stresses there, emphasizes repeatedly, is that the

23  children of Texas, every child in Texas was receiving what the

24  Court described as a basic minimum education.  In fact, the

25  Court says at page 48, it describes the Texas system as a

1      minimum education statewide program.

2              At page 45, in describing the components of that

3      program, those components, Your Honor, could track what the

4      Court began our discussion with this afternoon, and that is it

5      said Texas children had books, Texas children had teachers,

6      Texas children had principal.

7              Frankly, Your Honor, they didn't dream of the

8      conditions that exist here where children go to school where

9      the temperatures are 90 and 100 degrees, where they pass out,

10     where they throw up, where they suffer heat rash, where they

11     have to contend with rats, where they have to contend with

12     vermin, where there are not enough seats in the classroom

13     because of the extreme overcrowding, where the water is not

14     undrinkable, where the water is unsafe, where the bathrooms

15     don't work, where the --

16             THE COURT:  All right.  I read your -- your -- your

17     brief and I tried to be fair at the beginning, so let's get

18     back to --

19             MR. ROSENBAUM:  Well, let -- let's -- let me now go,

20     Your Honor, to both -- to both *Papasan* and *Plyler*.

21             THE COURT:  Yeah.  All right.  *Plyler*, here --

22     here -- nine years later, same state, Texas, bars the children

23     of illegal aliens from attending public schools.

24             MR. ROSENBAUM:  Not quite.

25             THE COURT:  No?

1          MR. ROSENBAUM:  Not quite, Your Honor.  In --

2    in -- first of all, I want to state *Plyler* is what Your Honor

3    said; *Plyler* is an equality case.

4          THE COURT:  Say it again.

5          MR. ROSENBAUM:  *Plyler* is an equality case.

6          THE COURT:  Okay.

7          MR. ROSENBAUM:  It is a case about what is the

8    responsibility there of the State of Texas where it affords a

9    basic education -- and I want to come to that phrase in just a

10   moment if I may -- a basic education to nearly all of its

11   children but leaves out what the court described as a discrete

12   class, page 230; as a select class, page 221; as an isolated

13   class, page 221; as a disfavored group, page 222.

14         THE COURT:  Yeah.

15         MR. ROSENBAUM:  But the Texas statutes, Your Honor,

16   there were two statutes there, they did not categorically bar

17   undocumented children from receiving an education.  Rather, the

18   first statute said the children could be required to pay a

19   tuition, that state wasn't going to fund it, and then left to

20   local school districts, the second statute, the decision

21   whether or not, in fact, to charge students a tuition.

22         That is an important distinction, Your Honor, because

23   it was not, in fact, a categorical denial.  It was a functional

24   denial in terms of saying to the school district, look, if you

25   don't want to have to pay for these children, you don't have

Motion to Dismiss • Thursday, August 10, 2017

26

 1    to, but the children still could go to that school.

 2             THE COURT:  I have a big question about *Plyler* --

 3             MR. ROSENBAUM:  Yes.

 4             THE COURT:  -- that -- that I don't understand.  And

 5    I believe one of your fellows there at the table used to work

 6    long ago for the -- for the justice who wrote the opinion, so

 7    no disrespect whatever.  But education is not a fundamental

 8    right.  Justice Brennan said that very clearly in the opinion,

 9    right?

10             MR. ROSENBAUM:  Yes, he did, Your Honor.

11             THE COURT:  But then they go ahead and apply

12    heightened scrutiny to a statutory scheme, which I accept what

13    you say that the scheme was, which is generally not done for

14    non-fundamental rights.

15             MR. ROSENBAUM:  Yes.

16             THE COURT:  But they say it's not the kids' fault,

17    education's important.  So I don't know where that leaves me in

18    terms of what I'm supposed to do.

19             MR. ROSENBAUM:  Great question, great question, Your

20    Honor.  I want to answer that in two respects.

21             THE COURT:  Okay.

22             MR. ROSENBAUM:  First, the actual unit in *Plyler* was

23    basic education, that's the phrase.  Frankly, Your Honor, we

24    incorporate that in our Complaint and our allegations support

25    it.

1       I want to give Your Honor the -- the -- the language

2   here.  At page 222, "The inability to read and write will

3   handicap the individual deprived of a basic education."  Later

4   on 222, "It is difficult to reconcile the cost or the principle

5   of a denial of basic education and the framework of equality

6   embodied in the Equal Protection Clause."

7       223, "By denying these children a basic education..."

8       Page 226, "We are reluctant... through no fault of

9   their own, access to a basic education."

10      A basic education, Your Honor, is not the same thing

11  as an education.  A basic education are the three Rs, either

12  the basic minimal skills that were talked about *Rodriguez* and

13  *Papasan*.  It is this the capacity to read or write, that's the

14  unit.

15      Now, let me get to the second point that Your Honor

16  is making.

17      THE COURT:  Yeah.

18      MR. ROSENBAUM:  This is what the Court said about

19  education.  And I -- of course Your Honor is right to look at

20  the majority decision by Justice Brennan, but I also invite the

21  Court to the concurring decisions of Justice Powell and Justice

22  Blackmun because this is what is said about education.  The

23  Court said -- no disagreement here in terms of the state of

24  law.  The Court said that education is not a fundamental right

25  but, but, 221 and 222, "it is not indistinguishable -- it is --

1    it is -- it is not indistinguishable from other forms of social

2    welfare legislation."  Education is different.  Education

3    affects -- and the Court pointed to three interests, all of

4    which the Court said bear deeply on the demands of the Equal

5    Protection Clause.

6            One, the Court said that without a basic education,

7    the three Rs, reading and writing, that without a basic

8    education, that one of the goals of the Equal Protection

9    Clause, the capacity of individuals to lift themselves up, to

10   achieve based on individual merit, the Court said it is -- it

11   is not possible for children to do that, which is built into

12   the Equal Protection Clause, education as the great equalizer.

13   Education is our democracy's engine to ensure that children can

14   better their circumstances and escape poverty.  That's one.

15           THE COURT:  All right.

16           MR. ROSENBAUM:  Two, the Court says -- and this

17   completely undercuts their argument about -- they have it

18   exactly opposite about who *Plyler* applies to.  The Court says

19   that a basic education is the very foundation of citizenship.

20   The Court says that it is our most vital institution when it

21   comes to inculcating the values of citizenship.  The Court

22   talks about those basic minimal skills as giving the individual

23   the capacity to exercise the prerogatives of citizenship, and

24   our Complaint, Your Honor, is replete with examples of that:

25   children who cannot possibly master a voting ballot or

1    participate in the political process.

2         And the third piece of the *Plyler* decision that

3    relates to Your Honor's question about education, the Court

4    said that where a child does not receive a basic education,

5    cannot read and write, that's the language picked up in

6    *Papasan*, that is the language that is picked up in *Kadrmas*,

7    where a child does not, that child will suffer the brand of the

8    state and the stigma of illiteracy which will be a lifelong

9    hardship, a lifelong hardship that will follow that child and

10   keep that child from our civic institutions and keep that child

11   from contributing to our society.

12        Now --

13        THE COURT:  Let me -- let me -- let me engage with

14   you a little bit.  I -- I understand and I really respect the

15   amount of command you have of the cases and I -- I know they

16   say what you say they do.  But I think what I need to determine

17   in a very straightforward manner is whether your -- I mean,

18   okay, we should talk about what your argument is and then how

19   it survives dismissal.  If you're saying that they received,

20   the students that is, no education, then the case is like

21   *Plyler* and we look at -- we give intermediate scrutiny to the

22   scheme that is at issue and -- and go from there.  If -- if

23   your argument is that the education is just really, really bad,

24   then they were deprived of a minimally adequate education and

25   we would I guess have to apply, me apply, rational basis

1    scrutiny.

2              But the whole thing that I can't figure out at this

3    point is how do I, without any facts in these allegations that

4    you've made and just recited and that Mr. Haynes say are

5    implausible and improper legal conditions, how do I determine

6    what's a minimally adequate education or no education at all

7    without testimony, discovery expert reports and some sort of

8    determination that would allow -- I mean I can't say what an

9    education is and isn't, right?  I mean we need to have some

10   evidence on this I would think.

11             MR. ROSENBAUM:  Your Honor, we are looking forward to

12   presenting that evidence and conducting that discovery, but I

13   want to be clear in terms of what we have precisely alleged in

14   this Complaint because that's the test.

15             THE COURT:  Yes.  I tend to mix a lot of questions up

16   with one.  So go ahead.

17             MR. ROSENBAUM:  Well, I tend to mix a lot of answers

18   up, Your Honor, so...

19             THE COURT:  Go right ahead.

20             MR. ROSENBAUM:  So the question here is precisely

21   what the Court said.  This -- this, Your Honor -- there may

22   well be cases where there are close questions as to whether or

23   not children, innocent children, children who through no fault

24   or failure of their own are assigned, compelled to go to these

25   schools.  There may be close cases.  This is not one of them,

Case 2:16-cv-13292-SJM-APP   ECF No. 109   filed 08/18/17   PageID.2579   Page 31 of 50
Motion to Dismiss • Thursday, August 10, 2017

31

1    Your Honor.

2         In this case we are saying exactly what Your Honor is

3    underlining.  We are saying that these children do not come

4    anywhere close to a basic education.  Why is that?  Because the

5    core components of a basic education -- the components,

6    frankly, Your Honor, you don't need a constitutional scholar to

7    talk about -- are there qualified certificated teachers in the

8    classroom who are teaching within the area of their expertise

9    and experience, who are trained and capable of teaching reading

10   or intervening where appropriate?

11        Are there books?  Are there books?  This is 2017 and

12   the state is arguing that it is constitutional to have a system

13   that doesn't supply its children, the children with teachers

14   and books and instructional materials and labs and computers.

15        These are schools, Your Honor, as we have

16   specifically alleged, where basic curricula, reading, science,

17   languages, math, are not offered in the classroom and instead

18   students are sent -- there's students in this courtroom today

19   who were sent to a gym to sit for periods on end and then they

20   were sent after two -- two or more periods to other core

21   classes where there were substitutes, and not substitutes like

22   Your Honor and I had when we went to school, substitutes for a

23   day or two who still had a lesson plan.  We're talking about

24   unqualified, non-certificated substitutes who don't have a clue

25   about the subject areas.

Motion to Dismiss • Thursday, August 10, 2017

```
 1              And then the conditions which Your Honor correctly
 2    described as the deplorable conditions.
 3              That, Your Honor, we need to -- we have alleged
 4    sufficiently to go to trial on the question as to whether these
 5    children are, in fact, receiving a basic education or indeed
 6    any education at all.
 7              The proficiency scores that Your Honor cited at the
 8    beginning of this hearing, zero, zero.  What does that mean?
 9    It means there's not a single child in that school who is
10    proficient.
11              Whether or not that, in fact, constitutes a basic
12    education, what are the specific facts that we have alleged?
13              THE COURT:  Well, wait a minute.  Let me -- let me
14    ask you to -- to address something before we run out of time
15    here.  Mr. Haynes takes the position, as I understand it,
16    that -- let's say everything you're -- you're laying out here
17    is true, proper, acceptable, factually to the Court.  I get the
18    sense what he's saying is, all right, fine, but the state's not
19    responsible for any of those outcomes.  The principals, the men
20    and women who sweep the floors, the -- the -- the -- the
21    building acquisition personnel who don't get books, the
22    painters who don't paint, you know, these are the people who we
23    ought to hold accountable for this, not -- not the state.  And,
24    in fact, the plaintiffs here haven't even alleged any sort of
25    statute or regulation that governs what the state's doing here,
```

Motion to Dismiss • Thursday, August 10, 2017

33

```
1    so we need to step back and make sure that -- that -- that Mr.
2    Rosenbaum and his clients have sued the right parties.  What's
3    your take on that?
4              MR. ROSENBAUM:  Well, Your Honor, I don't -- I don't
5    mean to be disrespectful but that's silly, isn't it?
6              The issue here as framed by Rodriguez to begin with
7    is whether or not the state's educational system -- the state
8    is responsible for a statewide system in education.  We're not
9    talking about some painter who doesn't paint a wall.  We're
10   talking about a statewide system that fails to provide, that
11   fails to provide --
12             THE COURT:  Maybe I heard him wrong.  Isn't that what
13   Mr. Haynes basically said?
14             MR. ROSENBAUM:  If -- if -- if he said statewide
15   system, Your Honor, the case --
16             THE COURT:  No, no, no.  I'm saying the way I posited
17   my question --
18             MR. ROSENBAUM:  Yeah.  And what I'm suggesting to you
19   is our complaint isn't about a painter.  Our complaint is about
20   a statewide system that is failing to provide basic minimal
21   skills and basic education while at the same time there are
22   state statutes, I quoted them earlier --
23             THE COURT:  But -- but there's none at issue here.
24   Do you think I can perform the analysis that we're -- that
25   we're talking about without having a statute?
```

1        MR. ROSENBAUM:  Of course.

2        THE COURT:  I mean *Rodriguez* had one, *Plyler* had one.

3        MR. ROSENBAUM:  Of course, Your Honor.  Imagine if

4   *Plyler* -- first of all, as I said, *Plyler* itself does not stand

5   for that proposition.  *Plyler* involved two statutes, but they

6   did not, in fact, say to undocumented children you can't go to

7   school.  They were -- it was a functional exclusion in the same

8   way that the children here face a functional exclusion.

9        Does it -- would it make any difference, Your Honor,

10  if in Texas, say, down at Brownsville or at El Paso, that

11  instead of these enabling statutes, children, undocumented

12  children went there and they got inside the school and they

13  walked inside the school and there were no teachers or books,

14  would it have made any difference to the analysis?  Where is

15  the case anywhere that stands for the proposition that state

16  action has to depend on a particular statute?  As I said, we

17  have the --

18        THE COURT:  Okay.  I guess --

19        MR. ROSENBAUM:  -- we have the statute here.  I'm

20  sorry.

21        THE COURT:  No, I understand your point and it's well

22  argued.

23        What -- what -- I guess I'm thinking, and I'm

24  actually kind of thinking more about what we're discussing

25  rather than what I have prepared for here today.  But I mean in

```
 1    terms of remedies, you know, we -- we -- we've got to find a
 2    way I would imagine, if everything -- if everything in the
 3    Complaint is proven and there's a judgment, we have to find a
 4    way to ultimately make sure that the state law that excludes
 5    the students from education is rectified.  I mean I can strike
 6    down a statute, I can, you know, order something to be enjoined
 7    as -- as outside of the Equal Protection Clause, but I don't
 8    know that I can just willy-nilly say, you know, here's what
 9    you've got to do, State of Michigan schools, you've got
10    to -- you know, I'm not capable of that.  I need to look at
11    something I think specific to -- to remedy.
12              MR. ROSENBAUM:  I -- I agree with that, Your Honor.
13              THE COURT:  Yeah.
14              MR. ROSENBAUM:  And -- and frankly, Your Honor, this
15    isn't rocket science, it's not even high school science, what
16    we're asking the Court to say in this particular situation.
17              What we're saying, Your Honor, is that where a
18    statewide system lacks the core components necessary to provide
19    a basic education, teachers, books, core -- a basic curricula
20    and the conditions that stand in the way of children being able
21    to learn and teachers being able to teach, the Court can say,
22    in terms of its equitable powers, look, state, you're the
23    experts.  States all over the United States -- my goodness, one
24    need only take a five-minute drive from our schools to Grosse
25    Pointe.  The state knows how to run a system where there are
```

1    teachers in classrooms who are qualified and books in

2    classrooms and books to take home for homework and where eighth

3    graders are not teaching math classes and where children are

4    not lumped in great groups of 60 to 80 and just put in an

5    auditorium or just put in a gym or where schools don't say,

6    "Can anybody hear speak Spanish?  You're our Spanish teacher."

7         What the Court -- what we're asking the Court to say

8    to the state is you're the expert, I'm not.  Do what other

9    communities in Michigan, do what every state in the union does

10   and fix this system so that all children have access to the

11   basic minimal skills.  If the temperatures are 100 degrees in a

12   classroom, if the temperatures are below freezing so that

13   children are shivering, so that children are wearing winter

14   coats, fix that.  We do that in our homes all the time, we do

15   it in offices all the time, we do it in this courtroom.

16   Getting a -- a temperature that is room temperature does not

17   require any special expertise.

18        School systems all over the country do not depend on

19   eighth graders to teach their math classes.  School districts

20   all over the country do not say to children, here, 30 to

21   40 percent of your teachers will not be certificated.  Instead

22   of learning math today, you're going to watch "Frozen," you're

23   going to watch Kung Fu Panda 3," as the students in this case

24   were required to do.

25        THE COURT:  All right.  I have two brief questions

```
 1    and then you can finish up and -- and conclude your argument
 2    and -- and say whatever else you believe to be important.
 3            I didn't want to leave you without talking a little
 4    bit about Obergefell.
 5            MR. ROSENBAUM:  Yes.
 6            THE COURT:  Yes.  That was -- that was -- trying to
 7    get the year on that.
 8            MR. ROSENBAUM:  It was two terms ago.
 9            THE COURT:  Obergefell basically lays out the
10    identification and protection of fundamental rights and talks
11    about history and tradition guiding and disciplining the --
12    the -- yes, you're right, that was 2015 term and --
13            MR. ROSENBAUM:  Justice Kennedy's decision.
14            THE COURT:  -- and relies on Poe vs. Ullman.
15            I wonder if that's the case I should be using or if
16    that in any way affects the standard for determining what's a
17    fundamental right.  If so, it appears that this Glucksberg case
18    speaks a little bit to the issue.  Fundamental rights are only
19    those, quote, "objectively, deeply rooted in the Nation's
20    history and tradition, implicit in the concept of ordered
21    liberty such as -- such that neither liberty nor justice would
22    exist if they were sacrificed."  Education might be one sort of
23    right that falls within that definition.  I just wanted to have
24    the opportunity --
25            MR. ROSENBAUM:  Great.
```

1        THE COURT:  -- to hear from you on that.

2        MR. ROSENBAUM:  Great.  Let me just stress again,

3   Your Honor, I don't want to be defensive about this because I

4   believe --

5        THE COURT:  No.

6        MR. ROSENBAUM:  -- there is a fundamental -- this

7   Court does not have to overrule *Rodriguez*.

8        THE COURT:  I'm not overruling anything.

9        MR. ROSENBAUM:  No, I'm not -- we're not asking the

10  Court -- in fact, our -- what we're --

11       THE COURT:  I know my place, Mr. Rosenbaum.  Go

12  ahead.  I'm sorry.

13       MR. ROSENBAUM:  And what, in fact, we're saying, Your

14  Honor, is that it is the state's position that is not

15  reconcilable with *Rodriguez* and *Plyler*, and I'm glad the Court

16  raised *Obergefell* as well.  We are not talking a fundamental

17  right of education.  To the extent that -- as I said, our

18  principal argument is an equality argument, but the precise

19  issue left open in *Rodriguez* and that Justice White talked

20  about in *Papasan* and that was discussed in *Kadrmas*, a right of

21  access to a basic education, *Obergefell* is right on the button,

22  Your Honor.

23       THE COURT:  Okay.

24       MR. ROSENBAUM:  And so is *Glucksberg*.  *Glucksberg*, as

25  Your Honor will recall, was the decision by Chief Justice

Motion to Dismiss • Thursday, August 10, 2017

1    Renquist that looked to history and tradition.  We meet that

2    test, we meet that test.  In 1837 when Michigan became a state,

3    one of the conditions of that statehood was that it provide

4    public education for all children.  In 1868 when the 14th

5    Amendment was ratified, 36 out of 37 states required basic

6    education and required children to sustained.  And as the Court

7    pointed out in *Yoder* at page 221, some level of basic education

8    is required in order for us to have an open system of

9    democracy.  So based on -- based on the notions of where public

10   education stood and what a basic education was, we easily meet

11   the test of *Glucksberg*.

12            In *Obergefell,* Your Honor will recall, Justice

13   Kennedy said, well, we're not overruling *Glucksberg*, but

14   sometimes our basic mores change as a democracy.  So even if

15   marriage between two individuals of the same gender could not

16   be supported by history and tradition at the time that the

17   Constitution was written, now, now our notions of dignity, our

18   notions of intimacy, our notions of how an individual should be

19   free to define him or herself by whom he chooses to love, those

20   values, even if they were not part of history and tradition, we

21   have evolved to that state, and that's frankly part of the

22   argument between Justice Kennedy and certain members of the

23   dissent.

24            THE COURT:  Do you think *Ober* -- *Obergefell* changed

25   the inquiry then of what constitutes the fundamental right, or

1   would the result here or in that case have been the same if you

2   applied *Glucksberg*?

3          MR. ROSENBAUM:  Either way, Your Honor, either way.

4   I think what *Obergefell* did was expand what it takes in order

5   for a putative right to be regarded as a fundamental right, but

6   we went either way.

7          Is there anything more basic in terms of the respect

8   for the constitutional values?  My goodness, *Plyler* says,

9   *Plyler* says how can an individual participate in terms of his

10  or her civic responsibilities, his or her civic opportunities

11  if he or she is denied a basic education?

12         And -- and if I may, Your Honor, it -- it completely

13  vexes me how the state says, well, that applies to undocumented

14  persons but it doesn't apply to citizens.  Could anything make

15  less sense?  The inquiry in *Plyler*, the opening inquiry in

16  *Plyler* was whether or not, in fact, undocumented persons should

17  be considered persons for the purposes of the 14th Amendment to

18  compare to citizens.

19         Take a look, Your Honor, at the concurring decisions

20  of Justice Powell and Justice Blackmun.  In *Plyler*, the

21  concern, a principal concern, not the sole concern but a

22  principal concern is, look, some unspecified number of the

23  class in *Plyler* will one day be citizens and how can we deny

24  citizens a basic education?  And I really want to emphasize

25  that's the language, that's the language.

Case 2:16-cv-13292-SJM-APP  ECF No. 109  filed 08/18/17  PageID.2589  Page 41 of 50
Motion to Dismiss • Thursday, August 10, 2017

41

1          In this case, Your Honor, virtually all our children

2     are citizens.  Everything that *Plyler* says about the

3     relationship between basic education and citizenship applies in

4     spades in this case.  And, Your Honor, this would apply no

5     matter what the group is: white students, black students,

6     Latino students or any group of students.  It's not race based,

7     it's not class based.  What the Court says in *Plyler* is any

8     discrete group, any isolated group.

9          Which brings me to the last point I want to make.

10    Your Honor asked counsel, Your Honor asked counsel about what

11    the interest is here and what's the level of review.  I want to

12    say two things with respect to that.  I believe, as the Court

13    has suggested -- I don't want to put words in Your Honor's

14    mouth, but I believe, as the Court has suggested, the proper

15    standard here is heightened scrutiny.  Goodness, if that

16    applied for a class of undocumented persons, surely it applies

17    to a group of citizens.  And frankly, Your Honor, looking at

18    *Bakki* at page 387, looking at *Katzenbach vs. Morgan* at page 653

19    and 654, these students are primarily black, and we ought to

20    take historical note of the fact from those cases that literacy

21    and access to literacy and access to basic education has been

22    the methodology of stigmatizing.

23          So I think we fit right in terms of the equality

24    occasion.  I don't think any of the distinctions that are

25    proposed by -- by the state with respect to *Plyler* make any

1    sense.  But, Your Honor, quite frankly, we win under rational

2    basis too.

3            THE COURT:  All right.  Well -- well -- well, I was

4    going to say it a different way.  If -- if I'm reading you

5    right, a functionally -- a functional equivalent of no

6    education, which I think you're trying to argue lies here, and

7    a minimally acceptable education that Justice White wrote of or

8    a basic education are all the same sort of thing, which are --

9    are -- are deserving -- fundamental rights that -- that

10   children are deserving of regardless of race, religion,

11   location.  We need to do an equal protection analysis --

12           MR. ROSENBAUM:  Exactly.  But let me say, Your Honor,

13   it is below basic.  That's what our allegations are, that this

14   is below basic.  That if I send students into a room where

15   there's no teacher and no books and no homework and no courses,

16   that's not a school, Your Honor, that's a warehouse.

17           THE COURT:  I know.  I'm just trying to determine the

18   standard.

19           Let -- Let me ask something else.

20           MR. ROSENBAUM:  May -- may I make one more point with

21   respect to rational --

22           THE COURT:  Yeah, one more point, but answer this

23   question before I forget it.  It -- this is totally

24   housekeeping.  I -- I had the docket up here and I've been

25   taking a look at it.  Did you dismiss voluntarily some of the

1    claims?  I'm -- I'm just curious where we are right now on

2    this.

3              MR. ROSENBAUM:  We did.

4              THE COURT:  You've got five plaintiffs, due process

5    and equal protection claims.  You -- you won an injunction and

6    I just wanted to get -- get -- get straight with you.

7              MR. ROSENBAUM:  That's right, but if Your Honor

8    thinks we were mistaken, we'd be glad to put them back.

9              THE COURT:  No, I don't.  I'm just --

10             MR. ROSENBAUM:  But, yes, that's -- that's accurate.

11             THE COURT:  Yeah, okay.

12             MR. ROSENBAUM:  Let me make my last point.  Your

13   Honor has been very patient.  Let me make my last point with

14   respect to rational basis, and the comparison to *Rodriguez* and

15   the comparison to *Plyler* is extremely instrumental in this

16   regard.

17             Your Honor said it exactly right earlier.  *Plyler* --

18   *Rodriguez* said we're not dealing with a case where kids, where

19   children did not get basic minimal skills.  The precise

20   interest that the State of Texas had then was to say can we

21   experiment with our funding system where there's a floor, where

22   there is this minimum adequate statewide educational program?

23   And the Court said, well, of course that meets rational basis.

24   And the interest of federalism, *New State Ice*, 1932 decision by

25   Justice Brandeis, dissent by Justice Brandeis, of course they

Case 2:16-cv-13292-SJM-APP   ECF No. 109   filed 08/18/17   PageID.2592   Page 44 of 50
Motion to Dismiss • Thursday, August 10, 2017

44

1    can experiment with that.  If they think that that's going to

2    improve parent involvement, local involvement, well, of course

3    they can do that.

4           That's not our case.  That's not our case.  And the

5    court said in *Plyler*, in *Plyler*, recognizing at page 220 that

6    where children are undocumented, where the status is

7    undocumented, the court specifically said we recognize the

8    state could have interests with respect to that.  But when it

9    comes to denying functionally a basic education, the court

10   found those -- those interests wholly insubstantial.  In fact,

11   the court says specifically that that doesn't meet the rational

12   basis test, that there is no rational reason for punishing

13   these children.

14          Your Honor, on a rational basis test, we

15   automatically defeat a motion to dismiss in order to

16   demonstrate that a class having a system that does not provide

17   teachers, books, courses and the conditions conducive to

18   learning fails even a rational basis test.

19          THE COURT:  Okay.  All right.  Great.  Thank you.

20   I've asked all my questions and I take it you've made all your

21   arguments and I'm grateful for the -- the passion and the

22   completeness with which you've approached the issue.

23          MR. ROSENBAUM:  Thank you for your patience, Your

24   Honor.

25          THE COURT:  My pleasure.  Good job.

1          Let's hear Mr. Haynes.  You've got the final word

2   because you have filed the motion, have the burden on it.  We

3   would be very happy to hear your response to Mr. Rosenbaum or

4   anything else you'd like to say.  Go right ahead.

5          MR. HAYNES:  Thank you.  You know, just a couple

6   observations.  You had asked -- or Mr. Rosenbaum said that it's

7   so easy that -- that what's -- what's missing here is that the

8   state has not put qualified teachers, books and curricula into

9   the classrooms in these classrooms in these five buildings, and

10  you asked how this Court could remedy it, and he said, well,

11  you just look down the road, look at Grosse Pointe.

12         Well, here's the problem.  The state doesn't run that

13  district either.  Its local school board runs that district,

14  makes those decisions.  The state doesn't authorize districts

15  to use unqualified teachers.  We have laws that require

16  teachers have, you know, appropriate certifications.  There's

17  some exceptions to those.  But again, this -- this failure to

18  have teachers, textbooks and curriculum are not decisions that

19  are made at the state basis, at the state level.  Those are

20  local government decisions.  The allocation of those resources

21  are local.

22         THE COURT:  So --

23         MR. HAYNES:  So --

24         THE COURT:  -- if I were to --

25         MR. HAYNES:  In essence, he's asking the Court to

Motion to Dismiss • Thursday, August 10, 2017

1   order these defendants, including the governor, to take over

2   these schools and to get involved in the day-to-day operation,

3   the governor, state officials, run five discrete schools in the

4   City of Detroit.

5         THE COURT:  Well, but -- but -- but I understand that

6   that's the whole crux of the matter because there's an

7   emergency manager, there's been this funding.  The state made

8   an exception long ago, as I understand it, to -- to -- to take

9   control and -- they made a decision, policy based, to take

10  control and try to do something in 1999 with what was going on

11  in -- in the schools.  That's my understanding of -- of why

12  we're here as we are today.  Go ahead.

13        MR. HAYNES:  Sure.  The state reacted as it could

14  to -- again, when we're talking about emergency managers, we're

15  talking about state laws that have been determined to be -- to

16  satisfy constitutional muster, but those laws appoint local

17  officials to run local governments; it's not the state.

18  That -- that individual, the emergency manager, an emergency

19  financial manager, all those individuals, the *Phillips* case

20  talked about it, those are appointed local officials, but it

21  doesn't change the nature as a local official.

22        THE COURT:  Okay.

23        MR. HAYNES:  So, you know, I -- I disagree with the

24  interpretation of *Plyler*.  *Plyler*, again, it -- it wasn't about

25  a basic level of education.  There may have been narrative

Motion to Dismiss • Thursday, August 10, 2017

47

1    discussions.  You know, there were narrative discussions about

2    education and -- and illiteracy and the social ills that

3    those -- that illiteracy can cause in *Brown*, in *Rodriguez,* in

4    *Plyler.*  Yet despite all those discussions, when you look at

5    the decisions, they found that education was still not a

6    fundamental right, that -- regardless of those importance.

7            And so when you talk about *Obergefell*, that's a

8    distinction.  Here you have a whole history of jurisprudence

9    that says that education is not a fundamental right.  But the

10   court in that case said when you look at the history of our

11   jurisprudence and our society, marriage is a fundamental right.

12           THE COURT:  Right.

13           MR. HAYNES:  And so again, there's -- there's just no

14   heightened scrutiny here.  There's -- there's been no attempt

15   to identify a specific state statute that treats these five

16   schools any different from the other schools in the Detroit

17   Public School District or the -- the thousands of other school

18   buildings throughout the state.  So the failure to allocate

19   textbooks is not a state level decision; that's an operational

20   decision at the local level.

21           The -- you know, the governor, the Director of the

22   Department of Technology, Management and Budget, the school

23   reform officer, the Superintendent of Public Instruction, the

24   state board members don't make those types of determinations,

25   and that's exactly what the *LM* case, the state Court of Appeals

1    case that interpreted these roles has said.

2           So I appreciate your time and I appreciate, as

3    counsel does, all the effort that's gone into this and will

4    continue to go into this case as you review it.  Thank you.

5           THE COURT:  Okay.  All right.  Thank you very much,

6    Mr. Haynes.

7           MR. ROSENBAUM:  Your Honor, may I have 30 seconds to

8    respond?

9           THE COURT:  No, you may not have 30 seconds to

10   respond.  I mean I -- I -- what are you going to say that

11   hasn't been said?  Go ahead, Mr. Rosenbaum, you can speak from

12   your table there.  But generally we have the defendant, the

13   plaintiff and the defendant and then we -- we -- we take it

14   under advisement, but go ahead.  What's -- what's so important

15   that you have to talk about?

16          MR. ROSENBAUM:  I just wanted to correct two

17   statements.  One, in fact, as alleged in our Complaint, in

18   June 2016 the State of Michigan passed a law that permits

19   unqualified, uncertificated teachers to teach in the Detroit

20   school system.  It is only the Detroit school system that is

21   the subject of that legislation.

22          Two, the -- the -- the attorney for the state said

23   that they didn't -- that the state never ran the schools here.

24   As I said, that is immaterial given that it's a system given to

25   statutes.  However, that's exactly what happened.  The State of

1    Michigan dissolved the local school board.  The emergency

2    manager took full control.  The SRO office runs our schools,

3    the lowest five percent of the schools in terms of the

4    day-to-day operations themselves as part of the system.  The

5    State of Michigan was -- was absolutely the -- the -- the

6    perpetrator of those acts.  They were operating it.  And, Your

7    Honor, just like they can't break something in the Pottery Barn

8    and leave it behind, that's what happened here, and the state

9    has to provide a system where everybody gets the opportunity to

10   learn.

11           THE COURT:  Okay.  All right.  Thank you for those

12   additional remarks.  The matter will be taken under advisement.

13           I must say that, as I did at the outset, preparing

14   for the hearing and participating in it was a great

15   professional privilege.  Both sides worked very hard in arguing

16   the motions and writing the briefs.  The Court's extremely

17   grateful.  We will try to get an answer to these nettlesome

18   questions to you in the form of an order resolving the motion

19   to dismiss by the State of Michigan as soon as possible.

20   Usually I say 30 days, this might take a little longer, but

21   we'll -- we'll stay in touch and see where we go after this.

22           In the meantime, have a pleasant afternoon.  Thanks

23   for staying within your time.  And we'll be in recess now.

24           THE LAW CLERK:  All rise.  The Court is in recess.

25           (Court in recess at 3:11 p.m.)

Case 2:16-cv-13292-SJM-APP   ECF No. 109   filed 08/18/17   PageID.2598   Page 50 of 50
Motion to Dismiss • Thursday, August 10, 2017

50

1                          —  —  —

2              C E R T I F I C A T I O N

3          I, Linda M. Cavanagh, Official Court Reporter of the

4     United States District Court, Eastern District of Michigan,

5     appointed pursuant to the provisions of Title 28, United States

6     Code, Section 753, do hereby certify that the foregoing pages 1

7     through 50 comprise a full, true and correct transcript of the

8     proceedings held in the matter of Gary B., et al versus Richard

9     D. Snyder, et al, Case No. 16-13292, on Thursday, August 10,

10    2017.

11

12

13                    s/Linda M. Cavanagh
                      Linda M. Cavanagh, CRR, RMR, RDR
14                    Federal Official Court Reporter
                      United States District Court
15                    Eastern District of Michigan

16

17

18    Date: August 17, 2017
      Detroit, Michigan
19

20

21

22

23

24

25